## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### WEST PALM BEACH DIVISION

**JORDAN KUPPINGER, M.D.**, and
**GERALD MOLLOY, M.D.,**

Plaintiffs,

v.                                                        Case No.: 21-cv-80492-BER

**JM.JZ ENTERPRISES, INC. d/b/a Coastal
Health Group, a Florida corporation, JONN A.
MCCLELLAN, MICHAEL CUTLER, and CHEIKH
ROBERTSON,**

Defendants.

_____/

### PLAINTIFFS' MOTION TO ENFORCE
### <u>SETTLEMENT AGREEMENT AND FOR SANCTIONS</u>

Plaintiffs, Dr. Jordan Kuppinger and Dr. Gerald Molloy ("Plaintiffs"), by and through their

undersigned counsel, hereby moves for expedited briefing on this motion and the entry of an order

enforcing the Settlement Agreement between Plaintiffs and Defendants, JM.JZ Enterprises, Inc.

d/b/a Coastal Health Group ("Coastal"), Jonn McClellan ("McClellan"), Michael Cutler

("Cutler"), and Cheikh Robertson ("Robertson") ("Defendants") (collectively "the Parties"), and

states as follows:

### I.    INTRODUCTION

Despite the Parties reaching a settlement agreement on all material terms, and after the case

was removed from Judge Middlebrooks' trial docket and referred to the jurisdiction of Magistrate

Judge Reinhart pursuant to the Settlement Agreement, the Defendants shockingly now claim that

the Parties never had an agreement and therefore, none can be enforced.  The Defendants' latest

attempt to circumvent a decision on their bad acts fails because the Parties have in fact agreed to

1

the essential terms of the settlement and intended to be bound by that agreement. Any claim by the Defendants that a settlement had not been reached is nothing short of disingenuous. In the words of Defendants' own counsel during Calendar Call to Judge Middlebrooks, "[t]he material terms have been agreed to" and any terms that remain unresolved are of "sufficiently insignificant nature" and merely "ancillary provisions." Yet, within eight days of those declarations, and despite an email string memorializing the Parties' agreement, the Defendants claim no agreement had been reached. The Defendants simply cannot be allowed to make a mockery of the settlement process and continue to waste judicial resources.  Expedited briefing is requested because Plaintiffs gave up the ability to have started this trial on October 20, 2021, and, importantly, the period of the non-compete provision as to Dr. Kuppinger is tied to the date of the settlement agreement.

## II.    FACTUAL BACKGROUND

1.    On March 5, 2021, the Plaintiffs filed the above-captioned lawsuit to seek redress for the unlawful termination of the Plaintiffs in retaliation for Plaintiffs' complaints regarding the patient brokering engaged in by McClellan, Cutler and Robertson on behalf of Coastal. The First Amended Complaint also alleged that Coastal converted medical records and equipment of Dr. Kuppinger, and included a declaratory judgment claim seeking rulings on the Shareholder Agreement signed by Plaintiffs and Defendants McClellan, Cutler and Robertson. [ECF No. 22].

2.    Pursuant to the Court's Pretrial Scheduling Order and Order Referring Case to Mediation [ECF No. 5], this case was set for trial during the two week period beginning on October 25, 2021, with Calendar Call scheduled to occur on October 20, 2021.

3.    On October 15, 2021, the Court entered an Order Referring the Case to Magistrate Judge for Settlement Conference. [ECF Nos. 104 and 106].

4.      Pursuant to the Order Referring Case to Magistrate Judge for Settlement Conference, the Parties appeared before United States Magistrate Judge Bruce Reinhart for a settlement conference on October 19, 2021. *Id*.  After six hours with Judge Reinhart, and another hour with just counsel and the Parties, a tentative settlement was reached. [ECF No. 112].

5.      After the settlement conference, the Parties continued to discuss the material terms of the settlement agreement via telephone conferences and through the exchange of detailed emails until October 20, 2021, when an agreement was reached.

6.      On October 20, 2021, the Parties appeared for Calendar Call before Judge Middlebrooks. During the Calendar Call, counsel for the Defendants represented to the Court that the "material terms [of the settlement] had been agreed to" and counsel for the Plaintiffs agreed. *See* Transcript of October 20, 2021 Calendar Call at 6-8, attached hereto as **Exhibit A**.  Counsel for Defendants also represented that any terms that were left unresolved were of "of sufficiently insignificant nature" and merely "ancillary provisions" such that the Defendants consented to allowing "Judge Reinhart to resolve whatever difference may exist." *Id*. at 7-8. Indeed, as described by Defendants' counsel, it "would simply be wordsmithing." *Id*. at 8.

7.      In fact, the Defendants were so confident that a settlement had been reached that they represented to Judge Middlebrooks that Magistrate Judge Reinhart could "resolve any dispute in the unlikely event that the dispute is not resolved, so that the Court could have confidence that this case would be off the calendar." *Id*. Based on these representations, Judge Middlebrooks removed this case from the trial docket. *Id*.

8.      Later that day, the Parties confirmed these representations to Magistrate Judge Reinhart in a telephonic conference at 4:00 pm. During that telephonic conference, counsel for the Defendants continued to reassure the Court that all material terms had been agreed upon and that

Judge Reinhart would retain jurisdiction to determine the applicability of any of the terms for which an agreement could not be reached.

9.      Relying on Defendants' counsel's representation during the Calendar Call and follow up discussion with Magistrate Judge Reinhart, the Plaintiffs agreed to consent to refer the case to Magistrate Judge Reinhart. Pursuant to this referral, Magistrate Judge Reinhart is available to "conduct all proceedings in this civil action (including a jury or nonjury trial)." [ECF No. 117]. Following the Parties' execution and filing of the Consent to Magistrate Jurisdiction, Judge Middlebrooks entered an Order of Reference to Magistrate Judge Reinhart on October 22, 2021. [ECF No. 118].

10.      On October 25, 2021, Magistrate Judge Reinhart entered an Order stating that Plaintiffs "shall file a stipulation of dismissal on the resolved claims and Plaintiff shall replead Count VII as discussed during the settlement conference" by November 1, 2021 (later extended to November 5, 2021).

11.      From October 22, 2021 through October 27th, 2021, the Parties exchanged drafts of a Settlement Agreement based upon the prior emails that contained agreed upon material terms, and were in the process of ironing out the terms of the written agreement, consistent with the agreement reached during the Settlement Conference and the subsequent exchange of emails between counsel.

12.      Without further discussion between the Parties, on October 28, 2021, counsel for the Defendants unexpectedly, via email, declared that there was no agreement and expressed a desire to move forward with trial, ignoring the prior agreement and representations to the Court that material terms were agreed upon.  Specifically, and without any support, Defendants' counsel stated that "[t]he revisions you have made to our draft proposal materially change the terms of the

4

proposal in ways that were neither discussed with us nor contemplated by our clients." *See* email exchange between counsel for Plaintiffs and counsel for Defendants, attached hereto as **Exhibit B** at 3.

13.     Counsel for Defendants had not even attempted to discuss any issues with Plaintiffs' counsel and has still not provided any explanation regarding which terms they claim had not previously been agreed to.

14.     Plaintiffs' counsel has attempted, on numerous occasions, to no avail, to ascertain the revisions that Defendants' counsel claim have changed the terms of the proposal in ways that were neither discussed with Defendants' counsel nor contemplated by Defendants. Plaintiffs' counsel has asked Defendants' counsel on at least three different occasions to detail the revisions cited in support of Defendants' position in an attempt to resolve any issues. *See* Exhibit B at 1-3. To date, counsel for the Defendants have refused to provide an answer to this request.  As discussed below, Plaintiffs' position is that there are no such changes that were not previously contemplated.

15.     Further demonstrating their bad faith, on November 1, 2021, while improperly attempting to withdraw the prior agreement, counsel for the Defendants also sought to renegotiate the previously agreed upon terms: "[a]ll prior settlement offers are hereby withdrawn, **but we remain open to discussing the possibility of settlement with either or both of your clients**." *See* Exhibit B at 1 (emphasis added).

### III.    LEGAL STANDARD

Settlement agreements are favored and will be enforced by Florida courts whenever possible.  *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985).   Indeed, settlement agreements are a favored mechanism to conserve judicial resources.  *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial resources.").  "Under federal law, a district court has 'inherent power to

summarily enforce settlement agreements entered into by parties litigant in a pending case.'" *Ford v. Citizens and Southern Nat. Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991). *See also Reed v. United States*, 717 F. Supp. 1511, 1514 (S.D. Fla. 1988) (district court retains inherent authority to summarily enforce a settlement agreement pending final dismissal). This enforcement authority extends not only to written settlement agreements, but to oral agreements as well. *See Welch v. N. Am. Tank Line, Inc.*, No. 8:06-CIV-23450-T-17-MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) ("A court is empowered to enforce oral settlement agreements."). A "[s]ettlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987) (citing *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985)).

## IV.   ARGUMENT

### A. The Settlement Agreement Must Be Enforced Despite the Parties Not Having An Executed Agreement Because the Material Terms Were Agreed

The lack of a formal executed settlement agreement by the Parties will not prevent the enforcement of a settlement where the Parties have agreed to the essential terms of settlement. *Albert v. American Family Ins. Co.*, 739 Fed. App'x 607, 609-10 (11th Cir. 2018) (affirming an order enforcing a settlement for a full general release based on email correspondence). "**A settlement agreement does not have to be in writing and it does not have to definitely fix all details of the parties' understanding in order to be enforceable.**" *Landan v. Caliber Home Loans, Inc.,* No. 0:19-CV-61984, 2019 WL 11505352, at *2 (S.D. Fla. Dec. 16, 2019), report and recommendation adopted, No. 19-CIV-61984-RAR, 2020 WL 7481144 (S.D. Fla. Jan. 7, 2020) (internal citations omitted) (emphasis added).

"As long as an intent to settle the essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements

have been fully recognized and approved by the Courts of this state." *Allapattah Serv., Inc. v. Exxon Corp.*, Nos. 05–21338, 91–0986, 2007 WL 7756735, *2 (S.D. Fla. Sept. 26, 2007). *See also Vital Pharms., Inc. v. S.A.N. Nutrition Corp., No. 06-60646-CIV-COHN, 2007 WL 1655421, at *6* (S.D. Fla. June 6, 2007) ("Execution of the settlement agreement is not a condition precedent to a settlement agreement, but rather is merely a procedural formality.") *Berman v. Kafka*, No. 3:10-CV-718-J-32MCR, 2012 WL 12903790, at *2 (M.D. Fla. Feb. 6, 2012), report and recommendation adopted, No. 3:10-CV-718-J-32MCR, 2012 WL 12903791 (M.D. Fla. Apr. 24, 2012), aff'd, 518 F. App'x 783 (11th Cir. 2013) ("the Settlement Agreement, though not formally executed by Plaintiff, was agreed to by Plaintiff and is binding upon him and Defendants, and shall be effective according to its terms notwithstanding the absence of his signature."). The **physical act of signing a memorialized document is considered to be "a mere formality"** when the parties have clearly shown an intent to be bound. *Reed*, 717 F. Supp. at 1517 (emphasis added).

Furthermore, established law makes clear that a settlement agreement may be reached through a series of oral agreements and email exchanges. *In re Rolsafe Int'l, LLC*, 477 B.R. 884, 902 (Bankr. M.D. Fla. 2012). *See also Yamashiro Fin. Servs., Inc. v. Tenmark Marine, Inc.*, No. 07-20197-CIV, 2008 WL 11412137, at *2 (S.D. Fla. Mar. 3, 2008) (Granting a party's Motion to Enforce Settlement Agreement finding that there was no dispute that both orally, and as memorialized by the parties' mutual exchange of correspondence confirming the terms, the parties entered into a binding settlement contract.); *Jarvis v. BMW of N. Am., LLC*, No. 2:14-CV-654-FTM-29CM, 2016 WL 1162324, at *2–3 (M.D. Fla. Mar. 22, 2016) citing *Warrior Creek Dev., Inc. v. Cummings*, 56 So. 3d 915 (Fla. 2d DCA 2011) (where the trial court found that all essential and material terms of the settlement were reflected in an email, the subsequent failure to sign the settlement agreement was not an effective revocation); *United States v. Pepper's Steel & Alloys,*

*Inc.*, 289 F.3d 741, 742 (11th Cir. 2002) (referring to a prior case on appeal where the court found that the insurer's oral offer to settle for $2 million, accepted two years later, formed a valid settlement agreement); *Bankers Sec. Ins. Co. v. Brad*y, 765 So.2d 870, 872–73 (Fla. 5th DCA 2000) (holding that an oral settlement agreement between the parties' representatives with settlement authority was binding); *Skrtich v. Thornton*, 2003 WL 24845555 (M.D. Fla. 2003) (oral settlement agreements are enforceable under both federal and Florida law).

In order for a settlement agreement to exist, the parties must have agreed on all essential terms. *Olguin v. Florida's Ultimate Heavy Hauling,* No. 17-61756-CIV, 2018 WL 4409986, at *4 (S.D. Fla. Sept. 6, 2018), report and recommendation adopted, No. 17-61756-CIV, 2018 WL 5098834 (S.D. Fla. Sept. 28, 2018). However, **uncertainty as to non-essential terms or small items will not preclude the enforcement of a settlement agreement**. *Id.* (emphasis added). Stated differently, "a settlement will be enforced if it is sufficiently capable of implementation." *Id*. citing *In re Rolsafe Int'l, LLC,* 477 B.R. 884, 903 (Bankr. M.D. Fla. 2012) (citing In re Sav-A-Stop, Inc., 124 B.R. 356, 359 (Bankr. M.D. Fla. 1991)).

Here, the oral agreements, email correspondences and Defendants' representations to Judge Middlebrooks and Magistrate Judge Reinhart make it evident that the Settlement Agreement must be enforced. The Parties have always intended to be bound by the terms of the agreement and went through great lengths to agree and memorialize the material terms. In a correspondence dated October 20, 2021 (prior to the Calendar Call), counsel for Defendants outlined terms to be included in the settlement:

1. Coastal will make an initial payment of $400,000 to be divided between Kuppinger and Molloy as they choose and total monthly payments of $50,000 thereafter.

8

2. Kuppinger's obligations under the non-compete will NOT be subject to arbitration in accordance with the agreement reached yesterday. Zativa Life is not excluded by the Non-Competition provision of the Shareholder Agreement.

3. The issue to be arbitrated regarding Molloy's note is the amount by which his $2.1 million payment will be reduced as a consequence of the failure of consideration for his contemplated stock purchase with a reduction of up to $1,355,000.00.

4. The enforceability of the non-competition provision pertaining to Molloy will be arbitrated as well, but not pertaining to Kuppinger.

5. The settlement documents will include the language: "While the Plaintiffs maintain the accuracy of prior sworn statements, they acknowledge that discovery taken in the course of this proceeding supports the conclusion that at no time did the defendants engage in unlawful patient brokering or fraudulent billing practices."

*See* October 20, 2021 email from M. Pike attached hereto as **Exhibit C**. After the Plaintiffs received these terms, the Parties engaged in telephonic conversations agreeing to the terms with minor differences that would need to be determined. Indeed, to date, there is only a small portion of No. 5 that remains to be decided. **All of the other terms contained in Defendants' counsel's October 20th email have been agreed to and are included in the most final version of the Settlement Agreement**. After the telephonic discussions on October 20, 2021, the Parties attended a Calendar Call before Judge Middlebrooks. During the Calendar Call, counsel for the Defendants represented to the Court that the **"material terms [of the settlement] had been agreed to"** and counsel for the Plaintiffs agreed. *See* Exhibit A at 6-8 (emphasis added).  Counsel for Defendants also represented that any terms that were left unresolved were of "of sufficiently insignificant nature" and merely "ancillary provisions" such that the Defendants consented to allowing "Judge

Reinhart to resolve whatever difference may exist." *Id*. at 7-8. Indeed, as described by Defendants' counsel, it "would simply be wordsmithing." *Id*. at 8. Later that day, the Parties attended a telephonic conference with Magistrate Judge Reinhart in which the Defendants confirmed the material terms had been agreed to and that Magistrate Judge Reinhart would retain jurisdiction to decide any remaining terms that had not been agreed. Immediately after that telephone conference, the Plaintiffs confirmed, in a written correspondence the material terms that had been agreed to, while also highlighting other terms that would be included in the settlement agreement. *See* correspondence from Plaintiffs' counsel to Defendants' counsel dated October 20, 2021, attached hereto as **Exhibit D.** From October 20 through October 22nd, the Parties exchanged email correspondences regarding the terms of the agreement which were then memorialized in the form of a Settlement Agreement that was sent to Defendants' counsel on October 22, 2021. On October 25, 2021, the Defendants returned the Settlement Agreement with their revisions. While the majority of the changes made by the Defendants were accepted by the Plaintiffs, the Plaintiffs could not agree to any of the terms that had not been previously agreed to or discussed. Accordingly, the Plaintiffs returned the most final version of the Settlement Agreement to the Defendants on October 26, 2021. *See* Settlement Agreement attached hereto as **Exhibit E[1]. The most final version of the Settlement Agreement (Exhibit E) shows (in track changes) the only** differences left to be determined. **It is without question that all monetary terms and payment time/frequency have been agreed to and are enumerated within the Settlement Agreement**.[2]

---

[1] Within Exhibit E, every word in black font has been agreed to by the Parties. Any word or provision that has been crossed out represents a term the Plaintiffs contend has not been previously agreed to. Any word or provision in red font represents a term that the Plaintiffs contend has been previously agreed to but which the Defendants contend was not.

[2] During the Calendar Call, Defendants' counsel confirm that "[I]f any terms remain unresolved. . . we would submit those terms to Magistrate Judge Reinhart to resolve whatever difference may

Despite this prior agreement and written Settlement Agreement, on October 28, 2021, counsel for the Defendants unexpectedly, via email, declared that there was no agreement and expressed a desire to move forward with trial, ignoring the prior agreement and representations to the Court that material terms were agreed upon. Specifically, Defendants' counsel stated that "[t]he revisions you have made to our draft proposal materially change the terms of the proposal in ways that were neither discussed with us nor contemplated by our clients." *See* Exhibit B at 3. As of the filing of this Motion, the **Defendants have failed to provide the Plaintiffs with any revision that they contend materially changes the terms of the agreement**.

Any argument from the Defendants that the Parties did not intend to be bound by the agreement until the Settlement Agreement was signed is also unavailing. "Absent an expressed intent by the Parties that no binding contract exist until negotiations are reduced to a formal writing, the lack of a formal document does not negate the existence of a binding contract." *In re Rolsafe Int'l, LLC*, 477 B.R. at 902-03. Here, there is no evidence that provides any indication whatsoever that the Parties did not intend to be bound until the agreement was written down and fully executed, nor is there is any evidence that the Parties conditioned the settlement on the execution of a formal written settlement agreement. In fact, the evidence strongly suggests the Parties fully intended to be bound and confirmed those representations to Judge Middlebrooks and Magistrate Judge Reinhart. The email correspondence from Defendants' counsel on November 1, 2021, **long after the material terms had been agreed to and those material terms had been memorialized in writing**, stating that "there is no settlement with either of your clients unless and

_____

exist. These are ancillary provisions. **They do not relate to the monetary terms of the agreement**." Exhibit A at 7-8 (emphasis added).

11

until an agreement is reduced to writing and signed by all parties," does nothing to prevent the Court from enforcing the Settlement Agreement reached the week before.

Because the Parties' oral and written communications along with the Defendants' representations during court proceedings evidence a valid agreement, this Court must enforce the Settlement Agreement.

**B.  The Settlement Agreement Must Be Enforced Because The Terms of the Settlement are Clear, Definite and Capable of Proof**

All that is required to enforce a settlement agreement is that the terms be clear, definite and capable of proof. In addition, the physical act of signing a document is a mere formality where the parties clearly intend to be bound. *Am. Appraisal Assocs., Inc. v. Am. Appraisals, Inc.*, 531 F. Supp. 2d 1353, 1358 (S.D. Fla. 2008) and *Reed*, 717 F. Supp. at 1516-17. Even assuming arguendo that this Court finds there are portions of the Settlement Agreement that require revision, the Settlement Agreement must still be enforced. *See Brewster v. MSC Crociere, S.A.*, No. 14-60991-CIV, 2015 WL 13389793, at *7 (S.D. Fla. June 11, 2015) (Granting a party's Motion to enforce settlement agreement concluding that the parties had entered into an enforceable settlement agreement and finding the parties' dispute as to the content of a "standard maritime release" was not fatal to the enforcement of the agreement, as the court would be able to reasonably define that term of art). *See also Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So.2d 404, 409 (Fla. 1974) (citations and internal quotations omitted) ("[t]he law, however, "does not favor, but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained. . . If the parties have concluded a transaction in which it appears they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even

though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left.").

Courts in this circuit have enforced settlement agreements in scenarios analogous to those in this litigation. *See Jarvis,* 2016 WL 1162324, at *2–3 (granting motion to enforce settlement agreement despite a party's failure to sign the agreement, finding there to be no legal requirement that the agreement be memorialized in a formal document). The court in *Jarvis* found that the plaintiffs' attorney had clear and unequivocal authority to enter into the settlement agreement. The court further found that the exchange of emails between the parties served as evidence of an expressed offer to settle representing an acceptance of the offer and the memorializing of the terms in the settlement agreement further signified that all essential terms were agreed upon. In reasoning, the court stated that the drafted settlement agreement was read and each party was given the opportunity to make changes and alterations after the essential terms of the settlement had been agreed upon. Because these elements were present, the court found the plaintiffs' subsequent revocation to be ineffective. *See also Reed*, 717 F. Supp. at 1518 ("[t]he settlement in this instance was made by experienced attorneys and the courts have long recognized that arms-length dispositions of litigation, particularly settlements made through counsel by sophisticated litigants, cannot lightly be set aside merely because subsequent developments may indicate that the bargain made proved more beneficial to one party than the other.") (internal citations omitted).

Similarly to *Jarvis*, here, the Parties agreed upon the essential terms of the settlement through email correspondences and oral communications. Once the essential terms had been agreed, the Defendants' counsel confirmed this agreement with Judge Middlebrooks and Magistrate Judge Reinhart. The record evidence is clear that there was an offer, an acceptance and agreement that the material terms had been agreed to. In consideration of the settlement, the

Plaintiffs were to receive monetary payments in exchange for the dismissal of the lawsuit against Defendants as well as relinquishing their ownership in Coastal Health Group. Once confirmed, the Parties memorialized the terms in the form of a Settlement Agreement which each Party had the opportunity to revise. It was only after that, the Defendants improperly attempted to revoke the already agreed upon settlement. As the court held in *Jarvis*, this Court should find the Defendants' subsequent revocation to be ineffective and enforce the settlement which has been agreed upon and memorialized in writing. As in *Reed*, each party here had experienced counsel that were familiar with the settlement process.

In support of the Plaintiffs' position, that there was an enforceable settlement agreement with clear and definite terms, the Court should look no further than the representations of the Defendants' own counsel. When determining the intent of a party to be bound, courts in this circuit analyze a party's own admission. *See Corrales v. Real Stone & Granite Corp.*, No. 08-14163-CIV, 2009 WL 10712060, at *1 (S.D. Fla. Apr. 17, 2009) (granting a motion to enforce a settlement agreement where the parties had represented to the court, during a pre-trial conference, that a settlement had been reached but the parties had not (or refused to) execute the agreement); *Swift Fin. Corp. v. Latin House Grill, LLC*, No. 16-23903-CIV, 2017 WL 8895346, at *5 (S.D. Fla. Dec. 29, 2017), report and recommendation adopted, No. 16-23903-CIV, 2018 WL 1894718 (S.D. Fla. Feb. 5, 2018) (finding the parties entered into a valid and enforceable settlement agreement based on Defendants' counsel's representation to the Court in a court filing that the parties had settled the case). *See also Reed,* 717 F. Supp. at 1516-18 (Granting plaintiffs' motion to approve and enforce the parties' settlement agreement finding the Defendants' clear intent to be bound by the terms of a settlement agreement where a representation by the Defendant was made in open court that "settlement terms had been reached").

In *Swift Fin. Corp.*, the court found that the parties entered into a valid and enforceable settlement agreement. First, the defendants' counsel deliberately, clearly, and unambiguously represented to the court in a court filing that the parties had settled the case. The *Swift* court found that judicial admission to be binding on defendants and in support, the court cited to *1899 Holdings, LLC v. 1899 Ltd. Liab. Co.*, 568 F. App'x. 219, 225 (4th Cir. 2014) ("[A] lawyer's statements may constitute a binding admission of a party if the statements are deliberate, clear, and unambiguous.") (quotation marks omitted); *accord Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010); *see also Masalmeh v. U.S. Atty. Gen.*, 628 F. App'x. 661, 664 (11th Cir. 2015) (deeming "an attorney's on-record statements [during immigration removal proceedings are] valid judicial admissions."). Based on these representations to the court, the judge concluded that defendants' counsel meant it when he said that the parties had settled the case. Notably, defendants' counsel never moved to strike or correct or amend the representations made to the court. Quite the opposite, at an evidentiary hearing, defendants' counsel affirmed the substance of that motion, admitting that he believed the parties had reached a settlement when he made that representation. Accordingly, based on counsel's own admissions in a court filing and at the hearing, the judge found that the parties reached a settlement agreement based on the terms set forth in an email correspondence. Second, the court found that defendants' counsel's position that "if it's not signed, there is no actual agreement" did not comport with Florida law. "None of the settlement communications submitted to the Undersigned say that the execution of a formal settlement is a condition precedent to a settlement. Rather, as occurs far too often, the parties agreed to the essential terms, the lawyers labored to memorialize the agreement in a comprehensive document, and something else derailed the process. Under those facts, an enforceable agreement still exists." *Id.*

Akin to *Swift Fin. Corp.*, here, counsel for the Defendants represented to the Court during Calendar Call that the "material terms [of the settlement] had been agreed to". *See* Exhibit A at 6-8.  Counsel for the Defendants also represented that any terms that were left unresolved were of "of sufficiently insignificant nature" and merely "ancillary provisions". *Id.* As the court reasoned in *Reed*, "**it is difficult to imagine that the [defendant] could have believed that there was never a settlement agreement.**" *Reed,* 717 F. Supp. at 1515 (emphasis added). Furthermore, similar to the attorney in *Swift Fin. Corp.*, counsel for the Defendants have failed to move to strike or correct or amend the representations made to Judge Middlebrooks or Magistrate Judge Reinhart regarding the settlement. As in *Swift Fin. Corp.*, Defendants' counsel confirmed their prior representations to Judge Middlebrooks in a telephonic conference with Magistrate Judge Reinhart. Lastly, identical to *Swift Fin. Corp.*, Defendants' counsel's representations in the November 1, 2021 email correspondence that there was no agreement because the Settlement Agreement was not executed does not comport with the law. Indeed, based on the agreements reached, the attorneys have labored to memorialize the agreement in the Settlement Agreement (Exhibit E), and the Defendants are now attempting to derail the process and renegotiate the terms of an agreement that had already been reached. Regardless of the Defendants' belief, an enforceable agreement exists and should be enforced.

### C.  "Magistrate Judge Reinhart Can Resolve Whatever Difference[s] May Exist"

Defendants' counsel has represented to this Court that they are "comfortable allowing Magistrate Judge Reinhart to resolve any dispute in the unlikely event that the dispute is not resolved." Exhibit A at 8. Despite the Defendants' contention to the contrary, there are very few terms of the settlement that remain to be decided. The most final version of the Settlement Agreement shows (in track changes) the **only** differences left to be determined. *See* Exhibit E.

16

Most notably, the only provisions that remain to be determined are:[3]

1.  **Whether the Collateral shall mean 40% of Coastal Health Group shares or 100% of Coastal Health Group shares.**

In a correspondence dated October 20, 2021 from Plaintiffs to Defendants (Exhibit D), Plaintiffs' counsel highlighted provisions to be included in the Settlement Agreement. One of those provisions relates to the collateral reads "Jordan is ok with using all company shares as collateral". *See* Exhibit D at 2. The Defendants have not expressed any disagreement with this term until it was drafted into the Settlement Agreement.

2.  **Whether all Defendants would be responsible for the settlement payment jointly and severally or whether only Coastal would be responsible for the Settlement Payment.**

First, the Parties have agreed that the Settlement Agreement is between the Plaintiffs, Coastal Health Group and the Individual Defendants. The Plaintiffs had asserted claims against Coastal Health Group and the Individual Defendants. As part of the consideration for this Settlement Agreement, the Plaintiffs would be obligated to dismiss their claims against the Individual Defendants. As such, Coastal Health Group and the Individual Defendants are jointly and severally liable for the Settlement Payment to the Plaintiffs. Holding otherwise would allow the Individual Defendants to enter into a settlement agreement without providing any consideration. In that scenario, the Individual Defendants would receive only a benefit, without providing anything in return.

---

[3] The Defendants have also attempted to include a provision that the Plaintiffs make themselves available to provide additional services to Coastal Health Group after the relationship ceases to be in existence. This provision had never previously been discussed with the Plaintiffs, nor was it made part of any settlement discussions.

### 3.   Whether Coastal Health Group's offer included a cap of $1,355,000 subject to the arbitration for Dr. Molloy.

As detailed in the track changes in provisions 2(d) and 6(a)(i), the Defendants have attempted to reduce the Settlement Payment by the full $2,100,000 value they have attributed to Dr. Molloy's portion of the settlement, based on their belief that he does not own all of his shares. Pursuant to the Settlement Agreement, this issue is to be arbitrated with your Honor on December 16th and 17th. However, that is in direct contradiction to the terms of the settlement. In an email dated October 20, 2021 at 10.48 am, counsel for defendants could not have made this provision any clearer: "The issue to be arbitrated regarding Molloy's note is the amount by which his $2.1 million payment **will be reduced as a consequence of the failure of consideration for his contemplated stock purchase with a reduction of up to $1,355,000.00**." *See* Exhibit C at 2 (emphasis added). This language was included by Defendants' counsel in an email correspondence dated October 20 and a subsequent correspondence also dated October 20, 2021. *See* **Exhibit F** at 2.

### 4.   Whether any assignment, sale or factoring of Coastal Health Group's Accounts Receivable without applying all or part of the proceeds to reduction of the Settlement Payment to Dr. Kuppinger and Dr. Molloy.

While it has been agreed that the Accounts Receivable cannot be factored, sold or assigned without applying the proceeds to the Settlement Payment owed to Dr. Kuppinger and Dr. Molloy, the Defendants have not agreed that the total amount of the proceeds should be applied to the Settlement Payment that remains outstanding. The Plaintiffs had agreed to receive full payment within six months of the Settlement Date based on the Defendants' representation that they did not have the funds to make the full payment right away. If, subsequent to the Settlement Agreement the Defendants were to engage in a funding transaction that would allow them to make the payment, the money owed to the Plaintiffs should be paid first prior to the Defendants being

18

allowed to use the profits from the Accounts Receivables created by the labor of Plaintiffs for any other purpose.

> **5. Whether a breach of the non-disparagement provision would be considered a material breach of the Settlement Agreement.**

The Plaintiffs are willing to include a non-disparagement provision, however, the Plaintiffs do not agree that a breach of this provision would be considered material. Therefore, that one part of this provision remains at issue. The Plaintiffs are concerned, based on prior experience in this litigation, that the Defendants will fabricate a communication falsely attributed to the Plaintiffs in an effort to avoid having to pay the full Settlement Payment. The Defendants' prior examples of making false allegations regarding Plaintiffs include: 1) alleging that Plaintiffs were improperly soliciting patients of Coastal Health Group; and 2) alleging that Plaintiffs sent copies of the publicly available First Amended Complaint to numerous law firms that conduct business with Coastal. Both accusations are completely without merit and despite requesting proof, the Defendants have failed to present anything to substantiate their allegations.

> **6. Whether the Plaintiffs can agree to include language in the Settlement Agreement that after discovery was completed, Plaintiffs remain unaware of any fraudulent billing practices or patient brokering.**

While Plaintiffs have attempted to accommodate the Defendants by including language in the Settlement Agreement that would be exempt from the confidentiality provision and help explain some of the allegations set forth in the First Amended Complaint, the Plaintiffs cannot agree to the one sentence that is left to be determined.  First, discovery was not completed in the litigation. Discovery-related sanctions motions filed by the Plaintiffs regarding the intentional withholding of over 1200 text messages related to the patient brokering allegations that were

produced a mere two weeks before trial were pending at the time of Calendar Call.[4]  These motions explain in detail the discovery that was improperly withheld from the Plaintiffs throughout the litigation and documents that remained to be produced.  Second, the Plaintiffs are not willing to make a public statement that is not true. Based on the discovery belatedly produced by Defendants, the Plaintiffs **are** aware of fraudulent billing practices and patient brokering engaged in by the Defendants. However, Plaintiffs could state that they do not have personal knowledge of such behavior since their knowledge confirming their allegations comes from Defendants' documents produced in discovery. Plaintiffs' proposed language reflecting this distinction is shown in Exhibit E at 17.

## V.    CONCLUSION

For the foregoing reasons, this Court should enforce the settlement agreement between Plaintiffs and Defendants.

**WHEREFORE**, Plaintiffs respectfully request the Court enter an order (1) directing Defendants to respond to this Motion by November 15; (2) enforcing the settlement agreement between the Plaintiffs and the Defendants; (3) determining which provisions should be included pursuant to the representations made by Defendants' counsel; (4) awarding monetary sanctions in the amount of the fees and costs incurred by Plaintiffs as a result of having to draft and file this Motion to Enforce; (5) Extending the time in which Plaintiffs must file a Stipulation of Dismissal and Amend Count VII until this Court has decided the instant Motion; and (6) any other relief this Court deems proper.

---

[4]  These motions were denied as moot by the Court when the case was removed from the trial docket based upon counsel's statements that the case was settled.  If the motion to enforce is not granted, Plaintiffs will immediately move to renew those motions, as critically important documents have been withheld, as confirmed by the deposition testimony of Cara Valenti.

## <u>CERTIFICATE OF CONFERRAL WITH COUNSEL</u>

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies it conferred in good faith via telephone with counsel for Coastal Health Group, McClellan, Robertson and Cutler on November 5, 2021 but counsel were unable to reach agreement as to the scope of the relief requested in this motion.

Dated:  November 5, 2021

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email:  Phil.rothschild@hklaw.com
*/s/ David Newman*
David Newman, Esq.
Florida Bar No. 107375
Email:  david.newman@hklaw.com
515 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone: (954) 525-1000
Facsimile: (954) 463-2030

and

Monica Vila Castro
Florida Bar No. 22976
Email:  Monica.castro@hklaw.com
Jesus E. Cuza
Florida Bar No.  428991
Email:  Jesus.cuza@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL  33131

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of November, 2021**,** I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will serve via transmission of

Notices of Electronic Filing generated by CM/ECF to all counsel of record listed above.

By:  */s/Philip E. Rothschild*
Philip E. Rothschild

## SERVICE LIST

Michael J. Pike
Florida Bar No. 617296
Email:  Pike@pikelustig.com
Pike & Kustig, LLP
1209 North Olive Avenue
West Palm Beach, FL 33401
***Attorneys for JM.JZ Enterprises, Inc.***
***(d/b/a Coastal Health Group)***

John Scarola
Florida Bar No 169440
JSX@searcylaw.com
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL  33409
***Attorneys for Dr. John McClellan D.C.,***
***Mike Cutler, and Cheikh Robertson***

Peter A. Tappert
Florida Bar No. 27100
Ptappert@wdpalaw.com
Weissman & Dervishi, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 1700
Miami, FL  33131
***Attorneys for Defendant Cheikh Robertson***