UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 9:21-80492-Civ-BER

JORDAN KUPPINGER, M.D., and
GERALD MOLLOY, M.D.,

      Plaintiffs,

v.

JM.JZ Enterprises, Inc. d/b/a COASTAL
HEALTH GROUP, a Florida Corporation,
JOHN A. MCCLELLAN, MICHAEL
CUTLER, and CHEIKH ROBERTSON,

      Defendants.
_____/

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS [D.E. 125]**

COME NOW, Defendants, JM.JZ ENTERPRISES, INC. d/b/a COASTAL HEALTH GROUP ("Coastal"), JONN A. MCCLELLAN ("McClellan"), MICHAEL CUTLER ("Cutler"), and CHEIKH ROBERTSON ("Robertson") (collectively "Defendants"), by and through the undersigned counsel, hereby file this Joint Response in Opposition to Plaintiffs', JORDAN KUPPINGER, M.D. ("Kuppinger") and GERALD MOLLOY, M.D. ("Molloy") (collectively "Plaintiffs"), Motion to Enforce Settlement Agreement and for Sanctions [D.E. 125] (the "Motion"), and state:

**I.    INTRODUCTION**

Plaintiffs sued Defendants seeking damages for wrongful termination and reinstatement to their employment and Director positions at Coastal; yet, the only substance of settlement negotiations throughout this litigation has been Plaintiffs' demand to be bought out by the Defendants to avoid the five (5) year payment plan set forth in the Amended Restated Shareholder Agreement concerning the buyout of a shareholder.[1] Those negotiations never progressed beyond an agreement to agree.

---

[1] Article IX(b) of the Amended Restated Shareholder Agreement states in pertinent part: "To the extent any part of the Purchase Price is represented by a promissory note or notes, said note or

1

A good faith belief, and representations based upon that good faith belief, that the material terms of a settlement agreement had been agreed upon does not in and of itself establish an enforceable settlement. See Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc., 704 So. 2d 669, 674 (Fla. 1st DCA 1997) ("It follows that counsel was unable to negotiate a binding agreement for LTM involving a matter which was of primary significance to UNCC. We conclude the failure of LTM's president to object to the terms recited by counsel was consistent with his June 5, 1996, testimony that he viewed the announcement of terms as a general summary of the parties' negotiations presented to the court as a courtesy, rather than as a stipulation.") The representations by defense counsel referenced in Plaintiffs' motion were representations made with a good faith belief that a settlement agreement would be reached. The Parties announced to the Court that they had agreed to invest their energies in resolving this case on the principle terms reached at mediation, but not a binding agreement (As Plaintiffs' counsel informed the Court on the record, the agreement was "tentative"). Importantly, issues of primary significance were not resolved. Subsequent communications failed to resolve them.

The tentative settlement outlines only the consideration to Plaintiffs. However, all essential terms of the consideration to the Defendants were not and have not been agreed upon, as evidenced by the Exhibits attached and Plaintiffs Motion. See [D.E. 125 Pgs. 17-20]. Moreover, the Parties' negotiations demonstrate that the execution of a written settlement agreement is a condition precedent to a binding settlement agreement. Accordingly, no settlement agreement can be enforced because: (1) there was only a "tentative" settlement and "tentative" settlements cannot be enforced; (2) there was not mutual assent to all material terms of the settlement; (3) there was no unconditional mirror image acceptance of an offer; (4) Local Rule 16.2(g)(2) requires that a written settlement is reached; and (5) the Parties intended that a written settlement agreement be executed in order for the agreement to become binding.

## II.    LEGAL STANDARD

### A.    State Contract Law Governs Enforcement of Settlement Agreement

"The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985).

---

notes shall be payable in substantially equal monthly installments of principal and interest over a period of time not exceeding sixty (60) months…" See [D.E. 22-1, Pg. 16].

Accordingly, principles of Florida's contract law govern the Court's construction and enforcement of the alleged settlement agreement. See Broadnax v. Sand Lake Cancer Ctr., *P.A.*, 819 F. App'x 799, 801 (11th Cir. 2020); see also Schwartz v. Florida Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987) (The determination of whether parties have entered into a binding settlement agreement is governed by the general principles of contract law.) "As such, there must be an offer, acceptance, and consideration in addition to a "meeting of the minds as to the essential terms" of the settlement agreement." Hannah v. Armor Corr. Health Services, Inc., 8:19-CV-596-TPB-SPF, 2021 WL 2668495, at *2 (M.D. Fla. June 3, 2021), report and recommendation adopted, 8:19-CV-596-TPB-SPF, 2021 WL 2660972 (M.D. Fla. June 29, 2021) (citing Lunas v. Cooperativa De Seguros Multiples De Puerto Rico, 100 So. 3d 239, 241 (Fla. 2d DCA 2012)).

"Pursuant to contract law, the acceptance of an offer which results in an enforceable agreement must be (1) absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly stated within the offer." Nichols v. Hartford Ins. Co. of the Midwest, 834 So. 2d 217, 219 (Fla. 1st DCA 2002) (citing Cheverie v. Geisser, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001)).

    **B.    There Must Be An Offer, Acceptance, and Meeting of the Minds for Their To Be An Enforceable Settlement Agreement**

"Generally, an acceptance of an offer must be unconditional and identical with the terms of the offer." Schlosser v. Perez, 832 So. 2d 179, 182 (Fla. 2d DCA 2002). "Thus, an acceptance must contain an assent to the same matters contained in the offer." Cheverie v. Geisser, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001) (internal citations and quotations omitted). "If the acceptance is not the mirror image of the offer in all material respects, ... it will be considered a counteroffer that rejects the original offer." Suarez Trucking FL Corp. v. Souders, 311 So. 3d 263, 267 (Fla. 2d DCA 2020), reh'g denied (Feb. 8, 2021), review granted sub nom. Suarez Trucking FL Corp. v. Solders, SC21-369, 2021 WL 2690999 (Fla. June 30, 2021) (internal quotations and citations omitted).

"Although settlement agreements are favored by the law, there must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable." Schlosser, 832 So. 2d at 182 (internal citations omitted). "A meeting of the minds is not whether there was an agreement of two minds in one intention, but on the agreement of two sets of external

3

signs—not on the parties having meant the same thing but on their having said the same." Hannah, 2021 WL 2668495 at *2 (internal citations and quotations omitted).

      C.      **The Party Seeking to Enforce A Settlement Agreement Bears the Burden of Proving the Opposing Party Assented to the Terms of the Agreement**

"Applying Florida law, the party seeking to enforce a settlement agreement bears the burden of proving, by a preponderance of the evidence, that the opposing party assented to the terms of the agreement." D.B.C. Corp. v. Nucita Venezolana, C.A., 18-25225-CIV, 2020 WL 8872096, at *1 (S.D. Fla. June 15, 2020) (citing Carroll v. Carroll, 532 So. 2d 1109, 1109 (Fla. 4th DCA 1988)). To be judicially enforceable, a settlement must be sufficiently specific and mutually agreeable as to every essential element. See Grimsley v. Inverrary Resort Hotel, Ltd., 748 So. 2d 299, 301 (Fla. 4th DCA 1999)). "A trial court's finding of a meeting of the minds must be supported by competent substantial evidence." Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc., 704 So. 2d 669, 673 (Fla. 1st DCA 1997) (internal citations omitted).

**III.    ARGUMENT**

      A.      **A Tentative Settlement Is Not Enforceable**

Following the court-ordered mediation, calendar call, and discussions with Magistrate Judge Reinhart, only a tentative settlement had been reached. The Parties had agreed to an outline of some, but not all material terms. A binding settlement agreement simply was not reached as clearly evidenced by the continuously evolving drafts of written proposals exchanged between the Parties.

"Preliminary negotiations or tentative and incomplete agreements do not establish a sufficient meeting of the minds to create an enforceable settlement agreement." Cheverie v. Geisser, 783 So. 2d 1115, 1118 (Fla. 4th DCA 2001). Here, it was clear that only a tentative settlement had been reached. Specifically, at the calendar call held on October 20, 2021, Jesus Cuza, counsel for Plaintiffs, stated to the Court "Your Honor, we have tentatively reached a settlement." **Exhibit 1**, 4:25 – 5:1. On October 20, 2021, this Court entered a Paperless Order stating in pertinent part: "Counsel advised the Court that they have reached a tentative settlement. [D.E. 115]. Subsequently, on October 20, 2021, this Court entered a second Paperless Order stating in pertinent part: "The Parties informed the Court during the calendar call that they have reached a tentative settlement…" [D.E. 116]. Because only a tentative settlement was reached, the Court set a deadline for the confirmation of a binding agreement or a mutual consent to jurisdiction of

4

the Magistrate Judge. The settlement was not confirmed, but the Parties filed their written jurisdictional consents evidencing the continuing need for judicial intervention. This Court cannot enforce a settlement where there was no sufficient meeting of the minds to create an enforceable settlement agreement.

Plaintiffs rely on Defendants' counsel's representations at the calendar call to establish that an enforceable settlement agreement was reached. However, no terms of the allegedly enforceable settlement agreement were announced or read into the record. In fact, the following dialogue between Judge Middlebrooks and counsel for Coastal, Michael Pike, took place concerning reading the material terms into the record:

> 9    THE COURT: I'm not going to insist on that if you have
> 10 confidentiality. All I need is to make sure of your
> 11 representation that the material terms are at least in writing
> 12 sufficient that I can enforce the settlement if you all get
> 13 bogged down in this final drafting. You can either put it on
> 14 the record here today or just assure that you have it exchanged
> 15 enough in a writing that I could enforce it. I will do whatever
> 16 is --
> 17   MR. PIKE: Your Honor, this is Michael Pike.
> 18 I will say that substantially all the terms have been
> 19 going back and forth by emails. We are drafting everything.
> 20 The material terms have been agreed to. There are probably a
> 21 couple of provisions that need to be discussed relative to
> 22 language, but those terms have also been discussed, **and as long**
> 23 **as we get these last few terms in, we have a deal.** We made
> 24 substantial progress yesterday and today.

Exhibit 1, Pg. 6 (emphasis supplied).

No matter what Defendants' counsel hoped or believed to be the case all essential/material terms had not been agreed upon. As evidenced by Mr. Pike's statement, what had been agreed upon and represented as an agreement did not encompass all of the material and particularly omitted terms concerning Defendants' consideration. "Where essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract." Suggs v. Defranco's, Inc., 626 So. 2d 1100, 1100–01 (Fla. 1st DCA 1993). Here, the statement by Mr. Pike "as long as we get these last few terms in, we have a deal" unequivocally demonstrates that the remaining terms to be negotiated were essential to Defendants because otherwise, there would be no deal (settlement). Accordingly, Plaintiffs' Motion must be denied.

**B.     All Essential/Material Terms Have Not Been Mutually Agreed Upon – No Mutual Assent**

No settlement can be enforced where every essential term is not mutually agreed upon. "To be enforceable, an agreement must be sufficiently specific, and reflect assent by the parties to all essential terms. Suggs v. Defranco's, Inc., 626 So. 2d 1100, 1100–01 (Fla. 1st DCA 1993) (citing Williams v. Ingram, 605 So.2d 890 (Fla. 1st DCA 1992)). "If a purported agreement leaves open its essential terms for future negotiation, or merely constitutes an agreement to agree, then there is no enforceable contract." Hannah, 2021 WL 2668495, at *2 (internal citations and quotations omitted). Here, no settlement was finalized and material terms continued to be changed by both Plaintiffs and Defendants as negotiations continued beyond the deadline set by the Court to confirm a settlment. While the parties engaged in preliminary negotiations, there was no enforceable settlement agreement because there was no assent by all parties to an agreement that was sufficiently specific and mutually agreeable as to every essential element. As evidenced in Plaintiffs' Motion, it is clear that several essential terms to the settlement have not been mutually agreed upon. Specifically, the following essential terms, as stated by Plaintiffs, have not been resolved:

> **1. Whether the Collateral shall mean 40% of Coastal Health Group shares or 100% of Coastal Health Group shares.**
>
> **2. Whether all Defendants would be responsible for the settlement payment jointly and severally or whether only Coastal would be responsible for the Settlement Payment.**
>
> **3. Whether Coastal Health Group's offer included a cap of $1,355,000 subject to the arbitration for Dr. Molloy.**
>
> **4. Whether any assignment, sale or factoring of Coastal Health Group's Accounts Receivable [was permissible] without applying all or part of the proceeds to reduction of the Settlement Payment to Dr. Kuppinger and Dr. Molloy.**
>
> **5. Whether a breach of the non-disparagement provision would be considered a material breach of the Settlement Agreement.**
>
> **6. Whether the Plaintiffs can agree to include language in the Settlement Agreement that after discovery was completed, Plaintiffs remain unaware of any fraudulent billing practices or patient brokering.**

See [D.E. 125 Pgs. 17-19].

7. Whether Kuppinger would be required to relinquish any claim to medical equipment in the possession of the Defendants.

8. Whether Plaintiffs would be required to cooperate in good faith in Coastal's collection of its Account Receivables.

Notably, all of the essential terms above constitute the Defendants' consideration in exchange for payment to Plaintiffs. In essence, Plaintiffs wish for this Court to enforce the monetary payments terms of the purported settlement agreement and disregard the fact that the agreement to those monetary payment terms were dependent upon a mutual agreement of the essential terms stated above. See Vision Palm Springs, LLLP v. Michael Anthony Co., 272 So. 3d 441, 444 (Fla. 3d DCA 2019) ("Preliminary negotiations do not establish a sufficient manifestation of mutual assent to create an enforceable settlement agreement.") There is no justice in such enforcement. Moreover, prior to agreeing to consent to magistrate jurisdiction as the Court's deadline for the confirmation of a settlement was rapidly approaching at noon, on October 21, 2021, counsel for Defendants sent an email to Plaintiffs' counsel stating: "We are prepared to submit the magistrate consent form with the understanding that there is no settlement until the material terms are mutually confirmed. If that confirmation does not occur, we will be trying the pending claims before Magistrate Judge REINHART." See **Exhibit 2**.

"Nevertheless, what constitutes an essential term of a contract will vary widely according to the nature and complexity of each transaction and must be evaluated on a specific basis." Miles v. Nw. Mut. Life Ins. Co., 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) (internal citations and quotations omitted). "Certainly, what is an 'essential term' of a contract differs according to circumstances." Giovo v. McDonald, 791 So.2d 38, 39 (Fla. 2d DCA 2001). Here, it is clear that the terms above are essential terms of the incomplete settlement agreement. For example, the provision concerning imposing individual liability upon the shareholder defendants is a crucial term that has not been agreed upon. See #2 above. Importantly, this provision was never negotiated or spoken of prior to Plaintiffs inserting same in the the first draft of the settlement agreement on October 22, 2021. See **Exhibit 3**. Defendants unequivocally do not agree to this provision and there is no deal with this provision included in a settlement agreement.

The terms pertaining to collateral are also crucial and have not been agreed upon. Defendants agreed to use Kuppinger and Molloy's relinquished shares as collateral but never agreed to use 100% of Coastal's shares as collateral. Plaintiffs attempt to put a cap of $1,355,000 subject to the arbitration for Molloy, but again, this was never agreed to by the Defendants and the Defendants specifically stated they wished to assert all defenses to the amended Count IV pertaining to the arbitration for Molloy, including set off. During the unreported conference before the Magistrate Judge, it was unequivocally confirmed that the Parties reserved all claims and defense with respect to Molloy's claimed ownership interest in JM.JZ Enterprises, Inc., which were to be asserted in an amended complaint.

The terms concerning whether a breach of the non-disparagement agreement is a material breach is an essential term as evidenced by the dispute of whether breach would be **material** or not. This lawsuit is based, in part, upon Plaintiffs' defamatory allegations against Defendants. Without including a breach of the non-disparagement agreement in the settlement, the door is left open for Plaintiffs to continue defaming the Defendants without consequence.

The language to be included in an exhibit to the settlement agreement, which is not subject to the confidentiality provision, is one of the most crucial terms of the incomplete agreement and a term that was referenced by Mr. Pike at calendar call as a substantial term that if not agreed upon there would be no deal. Specifically, there are several pending personal injury actions where Coastal's physicians provided medical services to those plaintiffs. During the depositions of Coastal representatives in the pending personal injury actions, defense counsels have questioned Coastal's representatives regarding this lawsuit and the allegations of unlawful billing practices. Because those allegations are unequivocally false, the exhibit with the language demanded by Defendants is of primary significance to the Defendants and a non-negotiable essential term. Plaintiffs have revised the language in the exhibit several times. However, Defendants never accepted the proposed revisions by Plaintiffs. The ownership of approximately $80,000.00 worth of medical equipment is an essential term. The Plaintiffs' cooperation in collecting tens of millions of dollars in Accounts Receivables is an essential term. The parties differ on the essential terms listed above. Accordingly, there was no meeting of the minds between the parties, and therefore, no enforceable agreement was created. See Suarez Trucking FL Corp., 311 So. 3d at 267 ("Here, the record clearly demonstrates that the parties differed on certain essential terms of the settlement.

As such, there was no meeting of the minds between the parties, and therefore, no enforceable settlement agreement was created.")

In Cheverie, the trial court dismissed the complaint, finding the parties had reached a settlement agreement despite the fact that the parties had not agreed on the indemnification language in the release. Cheverie, 783 So. 2d at 1116. The appellate court reversed, finding there was no meeting of the minds and "that there is no substantial competent evidence to support the trial court's finding that the parties reached a settlement of all of the essential terms." Id. at 1120. As set forth above and within Plaintiffs' Motion, the parties do not just differ as to the language of one essential term, but several essential terms. See Id. at 1119 ("Where the language of a release is disputed and the parties fail to reach an agreement as to the character, nature, or type of release to be used, an essential element of the agreement is not established.") This Court should rule in the same manner as the Court in Cheverie and find that Plaintiffs have not set forth substantial competent evidence to support Plaintiffs' assertion that the Parties reached a settlement of all of the essential terms.

**C.  No Unconditional Mirror Image Acceptance of an Offer in All Material Respects Occurred - Counteroffer**

As set forth below, there was no unconditional acceptance of a mirror image of an offer in all material respects, nor was there a sufficient meeting of the minds on all essential/material terms. See Don L. Tullis & Associates, Inc. v. Benge, 473 So. 2d 1384, 1386 (Fla. 1st DCA 1985) (There must be an offer, acceptance, and consideration, as well as a meeting of the mind on all essential terms. Noting that in order for a settlement agreement to be enforced, it must be "sufficiently specific and mutually agreeable on every essential element"). The Parties' continued negotiation of a final settlement agreement demonstrates that the tentative settlement reached was nothing more than an agreement to agree. "Although settlement agreements are favored by the law and enforced whenever possible, there must still be a manifestation of mutual assent as to the essential settlement terms in order for the agreement to be enforceable." Vision Palm Springs, LLLP, 272 So. 3d at 447. "Thus, an acceptance must contain an assent—or meeting of the minds—to the essential terms contained in the offer." Nichols v. Hartford Ins. Co. of the Midwest, 834 So. 2d 217, 219 (Fla. 1st DCA 2002). "An attempted acceptance can become a counteroffer 'either by adding additional terms or not meeting the terms of the original offer." Grant v. Lyons, 17 So. 3d 708, 711 (Fla. 4th DCA 2009).

"Courts apply an objective test to determine whether parties entered into an enforceable settlement agreement. Id. (citing Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957)). "Under this objective test, it matters not whether there was 'the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing.'" D.B.C. Corp. v. Nucita Venezolana, C.A., 18-25225-CIV, 2020 WL 8872096, at *1 (S.D. Fla. June 15, 2020) (citing and quoting Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985)). "As such, 'we evaluate the existence of assent by analyzing the parties' agreement process in terms of offer and acceptance.'" Id. (citing and quoting Kolodziej v. Mason, 774 F.3d 736, 741 (11th Cir. 2014)). Here, there was no acceptance of an offer that would render a settlement enforceable. The electronic communications exchanged between the parties and the Plaintiffs' inability to identify communications reflecting an offer an acceptance irrefutably establish serious negotiations that never reached a meeting of the minds.

On October 22, 2021, Plaintiffs' counsel emailed Defendants' counsel the first draft of the settlement agreement. See Exhibit 3. On October 25, 2021, Defendants' counsel sent a revised draft of the settlement agreement striking and revising certain terms that Plaintiffs included, which were not agreed upon, and adding essential terms that were omitted from Plaintiffs' draft. See **Exhibit 4**. Defendants rejected Plaintiffs' offer and Defendants' revised settlement agreement was not a mirror image acceptance of Plaintiffs' offer, but instead, a counter-offer. See Breger v. Robshaw Custom Homes, Inc., 264 So. 3d 1147, 1150 (Fla. 5th DCA 2019). ("An acceptance of a settlement offer must be a 'mirror image' of the offer in all material respects. Otherwise, it will be considered a counteroffer that rejects the original offer.") Similarly, on October 26, 2021, Plaintiffs sent another revised settlement agreement to Defendants striking and revising certain essential terms. See **Exhibit 5**. Subsequently, Defendants did not agree to the last of the proposed changes of the draft settlement agreement and were afforded the opportunity to revoke their agreement to settle, which they did. See Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989) ("A mere offer not assented to constitutes no contract, for there must be not only a proposal, but an acceptance thereof. So long as a proposal is not acceded to, it is binding upon neither party, and it may be retraced.") Because there was no unconditional acceptance by Plaintiffs of Defendants offer, there cannot be an enforceable settlement agreement. See Parsons v. Orthalliance, Inc., 130 Fed. Appx. 353, 356–57 (11th Cir. 2005) ("The parties continued to negotiate numerous material issues, such as the identity of the third party buyer, how and when Parsons would receive the full

balance of the purchase price, and the consequences of a failure to close. Several written drafts of a final settlement agreement were exchanged and rejected. These ongoing negotiations and the failure to reach a final settlement demonstrate that the case and controversy remained alive.") Accordingly, there is no enforceable settlement and this case should proceed to trial before Magistrate Judge Reinhart.

> D. **Execution of A Final Written Settlement Agreement Is A Condition Precedent to a Binding Contract**

On October 19, 2021, a tentative settlement was reached at the court-ordered mediation. **See** [D.E. 112]. Plaintiffs maintain the position that the incomplete settlement agreement must be enforced despite the parties not having reached a written settlement. Plaintiffs' argument is contrary to the requirement of Local Rule 16.2(g)(2) which states in pertinent part: "A party is not bound by anything said or done at the conference, unless a written settlement is reached, in which case only the terms of the settlement are binding."[2] Moreover, the Parties intended for a final written settlement agreement to be executed before any agreement would become binding. "Where the record establishes that the parties intended further action be taken prior to completion of a binding agreement, the agreement is not final." Vision Palm Springs, LLLP, 272 So. 3d at 447–48; see also Miles v. Northwestern Mutual Life Insurance Co., 677 F. Supp. 2d 11312, 1316 (M.E. Fla. 2009) ("Where the parties intended that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time.") Despite the "settlement" and agreement to the "material terms" characterizations, the October 20, 2021 calendar call transcript indicates, among other things, that the Parties intended that the agreement would not be binding until reduced to writing. This is revealed by the following excerpts:

> 3   MR. CUZA: Your Honor, the paperwork is being worked
> 4 on. We anticipate having the paperwork concluded by no later
> 5 than Friday.
>
> 17   MR. PIKE: Your Honor, this is Michael Pike.
> 18 I will say that substantially all the terms have been

---

[2] See Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923, 924 (11th Cir. 1986) ("local rules are valid and binding on the parties"); Peasley v. Armstrong World Indus., Inc., 128 F.R.D. 681, 682 (S.D. Fla. 1989) (local rules "have the force and effect of law, and are binding upon the parties and the court which promulgated them") (internal citations omitted).

> 19 going back and forth by emails. We are drafting everything.
> 20 The material terms have been agreed to. There are probably a
> 21 couple of provisions that need to be discussed relative to
> 22 language, but those terms have also been discussed, and as long
> 23 as we get these last few terms in, we have a deal. We made
> 24 substantial progress yesterday and today.
>
> 6   THE COURT: Okay. And when do you think you can
> 7 accomplish that? I mean, can you do it before Friday, I guess
> 8 is what I'm asking?
> 9 MR. PIKE: I do believe that we can have a settlement
> 10 agreement drafted by Friday, yes, between Holland & Knight,
> 11 Mr. Scarola and our firm, yes.
>
> 12  THE COURT:…
> 17 When can you at least have enough in
> 18 writing between the parties that we can enforce the settlement?
>
> 19  MR. SCAROLA: Your Honor, I have a suggestion, if I
> 20 may. I believe that we can have all of the material terms
> 21 resolved by noon tomorrow,…

See Exhibit 1.

Additionally, following the calendar call, on October 20, 2021, Plaintiffs' counsel sent an email to counsel for Defendants which stated in pertinent part: "Thus, the following is what is left to do: (1) **draft and execute a simple settlement agreement** (which David will start drafting) **that incorporates the points above and the points below** (other than those discussed above); (2) discuss with Judge Reinhart the scope of the evidentiary hearing before him and the date of the hearing; and (3) **implement the agreement between the parties**." See **Exhibit 6** (emphasis supplied). These statements establish that the parties contemplated that an initial draft would be prepared by one attorney, then submitted to opposing counsel for review and possible amendment. The transcript and email further reflect the Parties' recognition that a written agreement was a prerequisite to a binding agreement. These circumstances are not consistent with a determination that the Parties had a clear understanding that the agreement was final and enforceable on the abbreviated terms and essential terms that were not mutually agreed upon.

Here, the intent of the parties is objectively ascertainable through emails exchanged between counsel for the Parties and the plain meaning of the settlement agreement language. Emails between counsel for the Parties demonstrate that final approval by both Plaintiffs and

Defendants was required before the Parties could sign the written settlement agreement. Specifically, on October 22, 2021, Plaintiffs' counsel's email attaching the first draft of the settlement agreement states in pertinent part: "Please see an attached draft of the Settlement Agreement, but please note that we reserve the right to change any portion of what we are providing until we get to the final draft." See **Exhibit 7**. On October 25, 2021, counsel for Defendants emailed their revisions of the draft settlement agreement to counsel for Plaintiffs which states: "See attached. The revised settlement has not been reviewed by our clients, but is drafted in a manner that will likely be approved by our clients." See **Exhibit 8**. Because the decision to accept the revisions of the settlement agreement hinged on the Plaintiffs and Defendants' final approval and consent, there was no deal.

"Where the record establishes that the parties intended further action to be taken prior to completion of a binding agreement, the agreement is not final." Vision Palm Springs, LLLP v. Michael Anthony Co., 272 So. 3d 441, 447–48 (Fla. 3d DCA 2019) (citing Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992)). Here, Section 1 of the last revised draft of the settlement agreement unambiguously states: (h) "Effective Date" shall be the last date of execution of this Agreement by the last Party to this Agreement." As such, the Parties clearly intended for the agreement to become effective *only* upon execution by the last signatory.

Further, Sections 2(a), 2(b), 2(c), 2(d) and Footnote 1 outlines the time frame for payment:

> a. As part of the Settlement Payment, Coastal Health Group will pay $400,000 (Four Hundred Thousand Dollars) (the "Initial Payment") via wire transfer to an account designated by Dr. Kuppinger and Dr. Molloy to occur by 5:00 pm on the day after the Effective Date of this Agreement.
>
> b. As part of the Settlement Payment, Coastal Health Group will then pay five (5) monthly installments ("Installment Payments") of no less than $50,000.00 (Fifty Thousand Dollars) beginning thirty (30) days after the Effective Date.
>
> c. As part of the Settlement Payment, Coastal Health Group will then pay five (5) monthly installments ("Installment Payments") of no less than $50,000.00 (Fifty Thousand Dollars) beginning thirty (30) days after the Effective Date.
>
> d. As part of the Settlement Payment, a final payment of all amounts remaining to be paid to Dr. Kuppinger and Dr. Molloy will be paid by Coastal Health Group to Dr. Kuppinger and Dr. Molloy one hundred and eighty (180) days after the Effective Date of this Agreement (the "Balloon Payment"). This amount

will be equal to the Settlement Payment minus the Initial Payment, Installment Payments and any amounts the Court determines should be reduced from the Settlement Payment for the purchase of Dr. Molloy's shares (i.e., if Magistrate Judge Reinhart determines what, if any, is owed to Dr. Molloy due to Dr. Molloy not having paid for his shares in full).

Footnote 1: The Installment Payments shall be made at least every 30 days from the Effective Date of this Agreement.

See Exhibit 5.

Thus, the signatures of all parties establish the effective date that triggers the Initial Payment and thirty-day clock for Defendants' payment of the funds. Without signatures, there is no effective date. Without an effective date, there is not obligation to pay. The Court in Vision Palm Springs, LLLP dealt with very similar issues and held:

> In the instant case, Section 6 of the Second Revised Agreement unambiguously states: "The Effective Date shall be the date upon which the last signatory executes the Settlement Agreement." As such, the parties clearly intended for the agreement to become effective *only* upon execution by the last signatory.
> Further, Section 2a outlines the timeframe for payment: "Within thirty days of the Effective Date of this Settlement Agreement, the Coscan Defendants shall pay or cause to be paid the sum of $ 275,000.00 ...." Thus, the signatures of all parties establish the effective date that triggers the thirty-day clock for the Coscan Defendants's payment of the funds. Without signatures, there is no effective date. Without an effective date, there is no obligation to pay. Accordingly, the trial court erred when it imposed its own effective date.
>
> Because Vision never signed the proposed settlement agreement, the trial court's order enforcing the unexecuted agreement did not conform to the plain language of Section 6.

Vision Palm Springs, LLLP, 272 So. 3d at 448.

"An order enforcing a settlement agreement must conform with the terms of the agreement and may not impose terms that were not included in the agreement." Platinum Luxury Auctions, LLC v. Concierge Auctions, LLC, 227 So. 3d 685, 688 (Fla. 3d DCA 2017) (quoting Johnson v. Bezner, 910 So.2d 398, 401 (Fla. 4th DCA 2005)). Thus, just as the Court held in Vision Palm Springs, LLLP, this Court cannot impose its own effective date. Plaintiffs' contention that all essential terms had been agreed to, approved by all Parties, and that a binding contract existed fails

14

because Section 1's provision providing the definition of "Effective Date" would therefore be rendered superfluous in contradiction of basic contract law. See Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n, Inc., 169 So. 3d 197, 203 (Fla. 1st DCA 2015) ("[A] cardinal principle of contract interpretation is that the contract must be interpreted in a manner that does not render any provision of the contract meaningless."); Philip Morris Inc. v. French, 897 So. 2d 480, 488 (Fla. 3d DCA 2004) ("Courts are required to construe a contract as a whole and give effect, where possible, to every provision of the agreement.") Accordingly, no binding and enforceable settlement agreement exists between the Parties.

Similarly, this District Court in Roland Corp. v. inMusic Brands, Inc., 17-CV-22405, 2020 WL 10818391, at *1 (S.D. Fla. Sept. 28, 2020) recently ruled on a motion to enforce settlement with facts strikingly analogous to the facts in this action. In ruling on the motion to enforce settlement, the Court held: "However, a final written agreement may, like here, be a condition precedent to a binding contract...The executed settlement agreement was a condition precedent, rather than a formality…The Parties' continued negotiation of a final settlement agreement demonstrates that the Term Sheet was nothing more than an agreement to agree…Furthermore, it is clear from the negotiations following the mediation that not all of the essential terms of settlement were agreed to by the Parties at the time the Term Sheet was executed." Id. Following an evidentiary hearing, the Court held that plaintiff had "not met its burden to show that the Parties entered into an enforceable settlement agreement, but rather, expressly condition their settlement efforts on execution of a confidential settlement agreement." Id. Attached hereto as **Exhibit 9** is the Court's order in Roland Corp. on plaintiffs' motion to enforce settlement.

Just as in Roland Corp., the Parties here intended that a final settlement agreement be executed in order for the agreement to become binding and the negotiations following mediation and calendar call demonstrate that not all of the essential terms have been agreed upon. Thus, there is no enforceable settlement agreement and this Court should follow the same analysis and come to the same conclusion as the Court in Roland Corp.. Accordingly, Plaintiffs' Motion to Enforce Settlement Agreement and for Sanctions must be denied.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants respectfully request this Court deny Plaintiffs' Motion to Enforce Settlement Agreement and for Sanctions [D.E. 125] and allow this case to

proceed to trial before Magistrate Judge Reinhart. Defendants intend to file a Motion for an amended pretrial order in light of the current posture of this case.

**WHEREFORE**, Defendants, JM.JZ ENTERPRISES, INC. d/b/a COASTAL HEALTH GROUP, JONN A. MCCLELLAN, MICHAEL CUTLER, and CHEIKH ROBERTSON, respectfully request this Court deny Plaintiffs' Motion to Enforce Settlement Agreement and for Sanctions [D.E. 125], and for such other relief this Court deems just and proper.

## VERIFICATION

Under penalty of perjury, I declare that I have read Defendants' Joint Response to Plaintiffs' Motion to Enforce Settlement Agreement and Sanctions [D.E. 125]. My email address is andrew@pikelustig.com. I have personal knowledge of the exhibits containing email correspondences and draft settlement agreements.

*/s/ Andrew J. Boloy*
**Andrew J. Boloy**
**Florida Bar No.: 1018487**

**Dated:** November 15, 2021

Respectfully submitted,

**Pike & Lustig, LLP**

*/s/ Andrew J. Boloy*
Michael J. Pike
Florida Bar No.: 617296
Daniel Lustig
Florida Bar No.: 059225
Talina Bidwell
Florida Bar No.: 493163
Andrew J. Boloy
Florida Bar No.: 1018487
1209 N. Olive Avenue
West Palm Beach, FL 33401
Telephone: (561) 855-7585
Facsimile: (561) 855-7710
pleadings@pikelustig.com
*Attorneys for Defendant JM.JZ Enterprises, Inc.*

*/s/ John Scarola*
JOHN SCAROLA, ESQ.
Florida Bar No.: 169440

Email: jsx@searcylaw.com
mmccann@searcylaw.com
Primary email: scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300 Telephone
561-383-9451  Fax
*Attorneys for Defendants, McClellan, Cutler, and Robertson and Co-counsel for Defendant JM.JZ Enterprises, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via electronic mail on November 15, 2021, on all counsel or parties of record identified on the Service List below.

*/s/ Andrew J. Boloy*
**Andrew J. Boloy, Esq.**

## SERVICE LIST

**Holland & Knight LLP**
Jesus E. Cuza, Esq.
Monica Castro, Esq.
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Jesus.cuza@hklaw.com
Monica.castro@hklaw.com

**Holland & Knight LLP**
Philip E. Rothschild, Esq.
515 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 468-7881
Facsimile: (954) 463-2030
phil.rothschild@hklaw.com

**Weissman & Dervishi, P.A.**
Peter A. Tappert, Esq.
One Southeast Third Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 347-4070
Facsimile: (305) 347-4077
ptappert@wdpalaw.com
service@wdpalaw.com

**Searcy Denney Scarola Barnhart & Shipley, P.A**.
John Scarola, Esq.
2139 Palm Beach Lakes Blvd.
West Palm Beach, Florida 33409
Telephone: (561) 686-6300
Facsimile: (561) 383-9451
jsx@searcylaw.com
mmccann@searcylaw.com
scarolateam@searcylaw.com