IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**JORDAN KUPPINGER, M.D.**, and
**GERALD MOLLOY, M.D.**,
 Plaintiffs,
v.               Case No.: 21-cv-80492-BER

**JM.JZ ENTERPRISES, INC. d/b/a Coastal**    **FILED UNDER SEAL**
**Health Group, a Florida corporation, JONN A.**
**MCCLELLAN, MICHAEL CUTLER, and CHEIKH**
**ROBERTSON**,
 Defendants.
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND FOR SANCTIONS**

"*I congratulate you all on settling*."

  This is what Judge Middlebrooks stated after counsel for the parties represented that they had reached an agreement on all material terms of their settlement and ***assured*** Judge Middlebrooks he could remove the case from the trial calendar ***because there was sufficient agreement in writing between the parties in order for the Court to enforce the settlement***.

  To try to avoid their obligations under the settlement (by breaching the agreement and dishonoring their representations to Judge Middlebrooks), Defendants now suggest they only told Judge Middlebrooks they would "invest their energies in resolving this case" and that the agreement reached was "tentative." *See* Resp. at 2. But the transcript of the October 20 Calendar Call brings to light Defendants' dishonesty and lack of candor with the Court. *See* Rule 4-3.3 of the Rules Regulating the Florida Bar.[1]

  During Calendar Call, Judge Middlebrooks took steps to ***ensure*** that the parties did one of two things regarding the settlement, ***precisely to prevent a subsequent attempt by a party to renege on the agreement***: (1) "recite the essential terms of the settlement [for the record]" or (2) "***at least assure me you have enough in writing that I could enforce it . . . .***" *See* Exhibit A, Oct. 20, 2021

---

[1] Candor Toward the Tribunal: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." *See* Rule 4-3.3 (a)(1).

Hrg. Transcript ("Tr:") at 5:13-16 (emphasis and alteration added). Judge Middlebrooks repeated this request throughout the hearing, again telling the parties:

> "I am not going to insist on [you reciting the terms for the record] if you have confidentiality. All I need is to **_make sure of your representation_** that the material terms are at least in writing **_sufficient that I can enforce the settlement if you all get bogged down in this final drafting_**. You can either put it on the record here today **_or just assure that you have exchanged enough in a writing that I can enforce it_**."

Tr: at 6:9-16 (emphasis and alteration added). In response, one of Defendants' counsel, Mr. Pike, immediately stated the following to provide Judge Middlebrooks the **_assurances_** he was seeking:

> "**_I will say that substantially all the terms have been going back and forth by emails_**. We are drafting everything. **_The material terms have been agreed to_**. There are probably a couple of provisions that need to be discussed **_relative to language, but those provisions have also been discussed_**, and as long as we get these last few terms [relevant to language] in, we have a deal."

Tr: at 6:18-23 (emphasis and alteration added). Defendants' counsel (Mr. Pike) further represented the following to the Court:

> "I do not want to recite it [the settlement] on the record because there is confidentiality, but from all three lawyers—four lawyers that are here, **_I believe that we have an agreement_** and the substantial terms have been agreed with the exception of **_two_** substantial terms that we're waiting on **_semantics of the language_**. **_That's it_**."

Tr: at 6:25 through 7:5 (emphasis and alteration added). Afterwards, Defendants' separate counsel (Mr. Scarola) added the following to again **_reassure Judge Middlebrooks_** he had the guarantees he needed to call off the trial because of the existence of a settlement **_the Court could enforce_**:

> "[W]e would be willing to agree that if any terms remain unresolved as far as language is concerned, we would submit those terms to Magistrate Judge Reinhart to resolve whatever differences may exist. **_These are ancillary provisions. They do not relate to the monetary terms of the agreement. It would simply be wordsmithing_** and I would be comfortable allowing Magistrate Judge Reinhart to resolve any dispute in the unlikely event that the dispute is not resolved, **_so that the Court could have confidence that this case would be off the calendar_**."

Tr: at 7:19 through 8:7 (emphasis added).

"Based on this assurance," Judge Middlebrooks removed the case from trial calendar, specifically stating he would "rely on that representation and [ ] take [the trial] off the calendar for Monday morning." *Id.* at 8:13-17. Reassured by the parties' **_assurances_** that they had settled,

2

Judge Middlebrooks stated the following towards the end of the hearing: **"*I congratulate you all on settling.*"** *Id.* at 8:11-19 (emphasis added).

# ARGUMENT

I. **The Parties Agreed on the Material Terms of the Settlement and Judge Middlebrooks Relied on the Defendants' Counsel's Assurances.**

The representations of Defendants' counsel at the October 20 Calendar Call — and the Court's clear understanding of those representations — are fatal to Defendants' argument that the parties had not reached an enforceable settlement agreement.

As explained above, from the outset, the Court sought reassurance from counsel for both sides that they had reached an agreement on the essential terms and had "enough in writing that I [Judge Middlebrooks] could ***enforce it***." *Id.* at 6:13-15 (emphasis and alteration added). After the Court noted that he was looking to ***make sure*** "that the material terms are at least in writing sufficient that I [Judge Middlebrooks] can enforce the settlement if you all get bogged down in this final drafting[,]" Defendants' counsel ***emphatically*** reassured the Court that (1) the material terms had been agreed to; (2) what might potentially remain unresolved related to "semantics of the language" and "wordsmithing"; and (3) to the extent anything remained unresolved as to the pending language, the parties could submit those terms to Magistrate Judge Reinhart to resolve any differences. *See id.* 6-8. The Court accepted as true the ***assurances*** made by Defendants' attorneys and, based on these ***assurances***, Judge Middlebrooks took the case off of the trial calendar.

There is no question that ***Judge Middlebrooks (and Plaintiffs) would not have allowed Defendants to avoid the October 25, 2021 trial but for their assurances that the case settled and the writing (e.g., emails) were sufficient for the Court to enforce the settlement. Judge Middlebrooks' statements speak for themselves:*** "What I don't want to do is give up the courtroom and then have you all tell me things have fallen apart." *Id.* at 6:1-3 (emphasis added).[2]

At no time during Calendar Call did Defendants' counsel "clarify" that a settlement

---

[2] As Defendants themselves admitted, the material terms were in fact agreed to. ***This alone is enough to create an enforceable settlement agreement.*** *See Olguin v. Florida's Ultimate Heavy Hauling,* No. 17-61756-CIV, 2018 WL 4409986, at *4 (S.D. Fla. Sept. 6, 2018), report and recommendation adopted, No. 17-61756-CIV, 2018 WL 5098834 (S.D. Fla. Sept. 28, 2018) ("For a settlement agreement to exist, the parties must have agreed on all essential terms….[U]ncertainty over non-essential terms will not prevent the enforcement of a settlement agreement.").

agreement had not yet been reached, that the parties had merely "agreed to agree," or that their agreement was contingent on the written document being finalized. In fact, had Defendants made such equivocal statements, the Court surely would not have agreed to remove the case from its trial calendar—nor would have Plaintiffs consented to such removal. The Court took great pains to confirm that the essential terms of the settlement were agreed to, in writing, ***and ready for the Court's enforcement***, clearly in an effort to avoid the precise situation Defendants have now ***manufactured***. *See id.* at 5:25; 6:1-3, 13-15.

Indeed, when Plaintiffs' counsel used the term "tentative settlement," the Court immediately sought clarification and Plaintiffs' counsel provided the clarification requested:

| THE COURT: | You say you have a – I think you said tentative settlement? |
|---|---|
| PLAINTIFFS' COUNSEL: | Yes, Your Honor. |
| THE COURT: | What does that mean? I mean, you're just putting the final details on paper? What I don't want to do is give up the courtroom and then have you all tell me things have fallen apart. |
| PLAINTIFFS' COUNSEL: | So, Your Honor, ***we've agreed to the material terms of the agreement***, your Honor, and these terms, I believe -- obviously I can't speak for all counsel, but I believe we can submit it to the Court within a few hours. If the Court would like us to recite the terms for the record, I'm -- |

*See id.* 5:22-25; 6:1-8 (emphasis added).

Following the above exchange, the Court gave the parties the choice to "either put [the essential terms] on the record here today ***or just assure that you have it exchanged enough in a writing that I could enforce it***." *Id.* at 6:13-16 (emphasis and alteration added). Defendants' counsel chose the latter, representing to the Court that "***the material terms have been agreed to***," and ***assuring*** the Court that "***substantially all the terms have been going back and forth by emails***" and that the loose ends that remained related only to "semantics of the language" and "wordsmithing." *Id.* at 6:18-20; 8:3-4.[3]

---

[3] Under Florida law, this is sufficient for a binding settlement agreement. *Jarvis v. BMW of N. Am., LLC*, No. 2:14-CV-654-FTM-29CM, 2016 WL 1162324, at *2 (M.D. Fla. Mar. 22, 2016)

Consistent with Defendants' counsel's unequivocal representations to the Court during Calendar Call, the Court entered the following Order that same day:

> PAPERLESS ORDER SETTING DEADLINE FOR FILING CLOSING DOCUMENTS. The Parties informed the Court during the calendar call that they have reached a tentative settlement, ***and the Court congratulates the Parties on their amicable resolution of this matter***. As discussed, the Parties shall ensure that a stipulation of dismissal is filed no later than 12 p.m. tomorrow, October 21, 2021. Alternatively, the Parties may consent to the jurisdiction of the Magistrate Judge by that deadline.

*See* ECF No. 116 (emphasis added).

After Calendar Call, the Parties ***reiterated*** to Magistrate Judge Bruce Reinhart that a settlement had taken place. As the Court is aware, the Parties attended a telephonic conference with Magistrate Judge Reinhart in which the Parties ***confirmed*** to the Court that a settlement ***had been reached*** and that, in accordance with the settlement, the parties agreed that Magistrate Judge Reinhart would retain jurisdiction to rule on two issues relating to one of the Plaintiffs, Dr. Molloy. ***During the telephonic conference, the Court scheduled the hearing on the two remaining issues for December 16 and 17, 2021***. Subsequently, Judge Reinhart entered the following Order:

> PAPERLESS Order setting a two-day Bench Trial to begin on 12/16/2021 at 9:30 AM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. By 11/1/21, ***counsel shall file a stipulation of dismissal on the resolved claims*** and Plaintiff shall replead Count VII as discussed during the settlement conference. All pending motions are hereby denied as moot. Signed by Magistrate Judge Bruce E. Reinhart on 10/25/2021.

*See* ECF No. 119 (emphasis added). Not unlike Judge Middlebrooks, Judge Reinhart, too, listened to the Plaintiffs' and Defendants' attorneys representations and relied on the same to (1) schedule the December 16 and 17 evidentiary hearing and (2) issue the order directing the parties to file a stipulation of dismissal "on the ***resolved*** claims." *Id.*

**II.   The Terms of the Settlement Agreement, including the Material Terms**

The primary, essential terms of the Settlement naturally related to the dollar amounts being paid to Plaintiffs, when those payments would be made, and how they would be made. These

---

("Florida law is clear that a settlement agreement may be reached through a series of email exchanges").

essential terms were specifically negotiated and agreed to between the parties' counsel in a series of emails and phone calls exchanged between October 19, 2021 and October 20, 2021 as follows:

- Following the day-long settlement conference with Judge Reinhart, on the evening of October 19, 2021 counsel for Plaintiffs sent an email to counsel for Defendants outlining the essential terms agreed to. *See* Exhibit B, J. Cuza Oct. 19, 2021 11:24 PM Email.
- The next morning, on October 20, 2021, counsel for Defendants responded to the email with modifications to only a few select terms. No other terms than those mentioned were modified and no other terms were rejected. *See* Exhibit C, M. Pike Oct. 20, 2021 10:48 AM Email.
- Shortly before Calendar Call that same day, counsel for the parties (Mr. Cuza and Mr. Pike) had two phone calls to discuss Mr. Pike's email, where they agreed a resolution had been reached and what remained was to work on the "language" regarding two points (both of which had also been agreed to).
- During Calendar Call, Defendants' counsel represented exactly the above to the Court, which was where the parties had left things after their call right before the hearing.
- After Calendar Call, counsel for Plaintiffs sent an additional email to Defendants' counsel, copy pasting the email sent by Mr. Pike that morning and "confirming in writing" what the parties agreed on regarding each point raised by the Defendants on that email. At the close of his email, Plaintiffs' counsel stated: "All terms discussed below that are not discussed above have been agreed to by the parties." *See* Exhibit D, J. Cuza Oct. 20, 2021 4:28 PM Email.
- Shortly after the above email was sent, the parties had a conference call with Judge Reinhart about the settlement and the limited issues that would be resolved by Judge Reinhart during an evidentiary hearing— Judge Reinhart immediately scheduled the evidentiary hearing for December 16 and 17, 2021.

Each of the terms that were discussed within those emails and phone calls are outlined below:

| **Essential Terms Agreed To By the Parties** | | |
|---|---|---|
| *Term* | *Agreed To?* | *Can Any Remaining Dispute Be Resolved by Judge Reinhart?[4]* |
| **Terms Concerning Plaintiff Jordan Kuppinger** | | |
| $2,100,000 to be paid to Kuppinger | **Agreed to.** *See* Exs. B – D | |
| $400,000 to be paid at closing[5] | **Agreed to.** *See* Exs. B – D | |
| $50,000 to be paid monthly[6] | **Agreed to.** *See* Exs. B – D | |
| Balance of $2,100,000 to be paid within 6 months after transfer of shares (i.e., closing). | **Agreed to.** See Exs. B – D | |
| 100% of company shares will be used as collateral. | **Agreed to.** *See* Exs. B – D ("Jordan is ok with using all company shares as collateral). | |
| Whether the individual defendants are also responsible for payment, in addition to Coastal. | **Agreed to.** *See* Exs. B – D ("The $2,100,000.00 agreed to by *the parties* will be paid as follows"; "In the event of a breach, Jordan is also ok with providing ***defendants*** a 5-day curing period. Should ***defendants*** not cure ***their breach…***" ). | |
| Kuppinger cannot compete with Coastal Health Group for 2 years, with the exception of Zativa Life (for whom he can continue to provide services). | **Agreed to.** *See* Exs. B – D | |
| **Terms Concerning Plaintiff Gerald Molloy** | | |
| $2,100,000 to be paid to Molloy | **Agreed to.** *See* Exs. B – D | |

---

[4] The parties agreed on the record with Judge Middlebrooks that Judge Reinhart could resolve any disputed issues remaining regarding the terms of the settlement. The parties also agreed that Judge Reinhart's rulings are final and cannot be appealed.
[5] To be divided between Kuppinger and Molloy as they choose.
[6] To be divided between Kuppinger and Molloy as they choose.

| | | |
|---|---|---|
| $400,000 to be paid at closing.[7] | **Agreed to.** *See* Exs. B – D | |
| $50,000 to be paid monthly.[8] | **Agreed to.** *See* Exs. B – D | |
| Balance of $2,100,000 to be paid within 6 months after transfer of shares (i.e., closing). | **Agreed to.** *See* Exs. B – D | |
| Reduction of the $2,100,000 owed to Molloy (amount to be determined at an "arbitration"), if any, is capped at $1,355,000. | **Agreed to.** *See* Exs. B – D | |
| Validity of Molloy's Non-Compete is going to be arbitrated. | **Agreed to.** *See* Exs. B – D | |

In addition to the above essential terms, the parties negotiated and reached agreement on several other ancillary terms:

| **Non-Essential Terms/Issues Raised by Defendants** | | |
|---|---|---|
| Whether any assignment, sale or factoring of Coastal Health Group's Accounts Receivable [was permissible] without applying all or part of the proceeds to reduction of the Settlement Payment to Dr. Kuppinger and Dr. Molloy. | **Agreed to.** *See* Exs. B – D | |
| Whether a breach of the non-disparagement provision would be considered a material breach of the Settlement Agreement. | Parties agreed to a non-disparagement clause. *See* Exs. B – D | Yes. Whether a breach of such clause would be a material breach of Settlement Agreement was never discussed or negotiated during settlement negotiations, but can easily be decided by Magistrate Judge Reinhart. This is an issue of law; not an issue of fact. |
| Whether the Plaintiffs can agree to include language in the Settlement Agreement | | Yes. There is still a dispute regarding this, which the parties agreed before Judge |

---

[7] To be divided between Kuppinger and Molloy as they choose.
[8] To be divided between Kuppinger and Molloy as they choose.

| | | |
|---|---|---|
| that after discovery was completed, Plaintiffs remain unaware of any fraudulent billing practices or patient brokering. | | Middlebrooks will be decided by Magistrate Judge Reinhart. This is one of the two issues that were being worked on at the time that the parties appeared for calendar call.[9] |
| Whether Plaintiffs would be required to cooperate in good faith in Coastal's collection of its Account Receivables. | Issue never discussed or negotiated. *See* Exs. B – D | |
| Whether Kuppinger would be required to relinquish any claim to medical equipment in the possession of the Defendants. | Issue never discussed or negotiated. *See* Exs. B – D . | |

**III.   The Court Should Enter An Order Enforcing the Essential Terms of the Agreement**

In light of the above, the proper course is to carry out what Judge Middlebrooks intended in the event the "parties g[o]t bogged down in this final drafting[:]" ***enforce the settlement***. *See* Ex. A Tr: 6:12-13 (alterations added). Thus, Plaintiffs respectfully request the Court issue an order requiring immediate compliance with the essential terms of the settlement, including each of the following:

***As to Dr. Kuppinger*:**

1. Dr. Kuppinger shall be paid 2.1 Million dollars for his ownership in the Company.
2. $400,000 shall be paid immediately.
3. $50,000 shall be paid monthly until the entire $2,100,000.00 has been fully paid.
4. The entire $2,100,000.00 must be fully paid to Dr. Kuppinger by no later than 6 months from a date to be selected by the Court between October 20, 2021 and October 25, 2021.
5. Dr. Kuppinger shall honor the non-compete agreed to by the parties and documented in J. Cuza's October 20, 2021, Email.

---

[9] This was one of the "terms" the parties were working on regarding language that Defendants' counsel mentioned to the Court during Calendar Call. *See* Ex. A Tr: 7:2-5; 8:1-4 ("I believe that we do have an agreement and the substantial terms have been agreed with exception of two substantial terms that we're **waiting on the semantics of the language**" … **"It would simply be wordsmithing** and I would be comfortable allowing Magistrate Judge Reinhart to resolve any dispute...").

*As to Dr. Molloy*:

1. Dr. Molloy shall be paid $2,100,000.00 for his ownership interest in the Company less any amount the Court determines Defendants are entitled to deduct from the $2,100,000.00 up to a maximum deduction of $1,355,000.00, as agreed to in the two emails exchanged by M. Pike and J. Cuza on October 20, 2021. The evidentiary hearing on this issue shall take place on December 16 and 17, 2021.

2. The entire amounts due to Dr. Molloy must be fully paid to Dr. Molloy by no later than 6 months from a date to be selected by the Court between October 20, 2021 and October 25, 2021.

3. Dr. Molloy shall agree with Dr. Kuppinger what percentage of the following amounts shall be received by him: (1) the $400,000.00 that shall be paid by Defendants immediately, and (2) the $50,000.00 that shall be paid by Defendants monthly until the total amounts due to Dr. Kuppinger and Dr. Molloy are fully paid.

4. The validity and enforceability of Dr. Molloy's non-compete shall be determined by the Court during the evidentiary hearing scheduled for December 16 and 17, 2021.

*Remaining Issues, if any, and Enforceability:*

Finally, Plaintiffs respectfully request that the Court Order reiterate the parties' agreement that any remaining issues regarding the Settlement are to be determined by the Court (Judge Reinhart) and are non-appealable. To ensure that all parties fully comply with the terms of the Settlement as documented by the Court in the Order, Plaintiffs also respectfully request that the Order state that the Court will sanction any party or attorney that acts in a way that is inconsistent with the Order or is in contempt of the Order. Finally, consistent with the discussions with Judge Reinhart on October 20, 2021, Plaintiffs shall dismiss with prejudice all claims resolved and amend Court VII of the complaint to include the limited issues to be tried on December 16 and 17, 2021.

Dated:  November 18, 2021             Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Philip E. Rothschild*
Philip E. Rothschild
Florida Bar No. 0088536
Email:  Phil.rothschild@hklaw.com

*/s/ David Newman*
David Newman, Esq.
Florida Bar No. 107375
Email: david.newman@hklaw.com
515 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 525-1000
Facsimile: (954) 463-2030

and

Monica Vila Castro
Florida Bar No. 22976
Email: Monica.castro@hklaw.com
Jesus E. Cuza
Florida Bar No. 428991
Email: Jesus.cuza@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of November, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve via transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record listed above.

By: */s/Philip E. Rothschild*
Philip E. Rothschild

## SERVICE LIST

Michael J. Pike
Florida Bar No. 617296
Email: Pike@pikelustig.com
Pike & Kustig, LLP
1209 North Olive Avenue
West Palm Beach, FL 33401
***Attorneys for JM.JZ Enterprises, Inc.***

*(d/b/a Coastal Health Group)*

John Scarola
Florida Bar No 169440
JSX@searcylaw.com
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL  33409
*Attorneys for Dr. John McClellan D.C.,*
*Mike Cutler, and Cheikh Robertson*


Peter A. Tappert
Florida Bar No. 27100
Ptappert@wdpalaw.com
Weissman & Dervishi, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 1700
Miami, FL  33131
*Attorneys for Defendant Cheikh Robertson*