UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-80492-BER

JORDAN KUPPINGER, MD, et al.,

               Plaintiffs,

      v.

JM.JZ ENTERPRISES, INC., et al.,

               Defendants.

_____/

## ORDER DENYING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT (ECF NO. 125)

Presently before me is a motion filed by Plaintiffs Jordan Kuppinger, M.D. and Gerald Molloy, M.D. to enforce a settlement agreement purportedly reached by the parties in October 2021. ECF No. 125. According to Plaintiffs, the parties agreed to all the material terms of their dispute (thus resolving the allegations in the Amended Complaint that Defendants were engaged in an unlawful patient brokering scheme and that Plaintiffs were wrongfully terminated for their opposition to the scheme) and therefore, Defendants should be bound by the settlement.

The Defendants named in the Amended Complaint are JMJZ Enterprises, Inc., d/b/a Coastal Health Group ("Coastal"), which provides medical and injury care at clinics in Florida, and the three individual Defendants (Michael Cutler, Cheikh Robertson, and Jonn McClellan), who together with Plaintiffs, serve as Coastal's

shareholders.[1]

Following the denial of the parties' cross-motions for summary judgment by the Honorable Donald M. Middlebrooks (ECF No. 109), I conducted a settlement conference on October 19, 2021.  By the end of the day an agreement had not yet been reached, but the parties continued negotiating.  The following day, counsel appeared before Judge Middlebrooks at a calendar call, where they represented that a settlement on all material terms had been achieved, but that negotiations were continuing as to a few outstanding matters.  ECF No. 122.  The trial was scheduled to begin five days later, but based on this representation, Judge Middlebrooks removed the matter from his trial calendar.  The parties were ordered to file a stipulation of dismissal the following day or consent to have me preside over the resolution of the case.  The parties opted for the latter.  ECF No. 117.

Thereafter, settlement negotiations deteriorated, resulting in Plaintiffs filing the instant motion seeking to enforce the terms to which the parties had purportedly agreed.  Defendants oppose the motion claiming that no enforceable settlement was ever reached because the parties' negotiations "never progressed beyond an agreement to agree."  ECF No. 131.  In their reply, Plaintiffs contend that defense counsel's representation at the calendar call that a settlement was reached belies their current claim that there was, in fact, no meeting of the minds.  ECF No. 133.  I conducted an evidentiary hearing on Plaintiffs' motion.  ECF Nos. 134, 160, 162, 168.

---

[1] Plaintiffs work as physicians for Coastal.  Dr. Kuppinger is a board-certified anesthesiologist and Dr. Molloy is a board-certified neurosurgeon.

Counsel for both sides testified and proffered evidence revealing the exchange of proposed terms during the settlement negotiations.  Based on the evidence presented at the hearing, I find that a meeting of the minds as to all material terms was not reached and therefore Plaintiff's motion to enforce a non-existent settlement agreement must be denied.

### EVIDENCE PRESENTED

At the evidentiary hearing I heard testimony from Plaintiffs' counsel, Jesus Cuza, as well as from defense attorneys Michael Pike, Andrew Boloy, and Jack Scarola.  I found each of these witnesses to be credible.  The parties also introduced email correspondence and draft settlement agreements.

Prior to the calendar call before Judge Middlebrooks, counsel exchanged emails attempting to memorialize the terms negotiated during the settlement discussions. The first email was sent by Mr. Cuza at 11:24 p.m. on October 19, 2021.  *See* Plaintiffs' Exhibit 1.  Mr. Cuza's email purported to list the terms that had been agreed upon as well as those that were still being negotiated.  The email reflects the agreed-upon amount of money to be paid to Plaintiffs.  It does not specify which Defendants would be responsible for making the payments, but it states that in the event of a breach "*defendants* will be obligated to pay."  Plaintiffs' Exhibit 1 (emphasis added).  Mr. Cuza's email states that "all company shares" will be used as collateral to secure the financing Defendants needed to make the settlement payments, and that Dr. Kuppinger will "[c]ontinue to abide by the non-compete agreement," but that this will

"exclude[] Zativa Life."   *Id.*[2]   The email reflects the parties' intent to submit the dispute regarding Dr. Molloy's non-competition agreement to an arbitration before me.  *Id.*

Mr. Pike's responsive email was sent the following day, October 20, 2021, at 10:48 a.m., shortly before calendar call.  *See* Plaintiffs' Exhibit 2.  It states that it is a non-negotiable response to Mr. Cuza's email and that it represented Defendants' "final offer."  The email indicates that "Coastal" (rather than all of the Defendants) will pay the amounts due to Plaintiffs (although it does not address liability in the event of a breach), and that Zativa Life is not excluded from Dr. Kuppinger's non-competition agreement.  *Id.*  Mr. Pike's email also stated,

> The settlement documents will include the language: "While the Plaintiffs maintain the accuracy of prior sworn statements, they acknowledge that discovery taken in the course of this proceeding supports the conclusion that at no time did the defendants engage in unlawful patient brokering or fraudulent billing practices."

*Id.* ("the exonerating statement").  Mr. Pike's email is silent as to several issues raised in Mr. Cuza's earlier email.

At the calendar call on the afternoon of October 20th, Mr. Cuza told Judge Middlebrooks, "Your Honor, we have tentatively reached a settlement . . . the paperwork is being work on" and "we've agreed to the material terms of the agreement . . ."  Plaintiffs' Exhibit 6 at 4-6.  Mr. Pike concurred, "The material terms

---

[2] Mr. Cuza testified at the evidentiary hearing that Dr. Kuppinger wanted a "carve-out" to his non-competition agreement that allowed him to continue providing services to Zativa Life that he "had all along been providing."  *See* 3/1/22 Hrg. Tr. 12:24-13:6.

have been agreed to.  There are probably a couple of provisions that need to be discussed relative to language, but those terms have also been discussed, and as long as we get these last few terms in, we have a deal." *Id.* at 6.  Mr. Pike concluded, "I believe that we do have an agreement and the substantial terms have been agreed with the exception of two substantial terms that we're waiting on the semantics of the language.  That's it." *Id.* at 7.  Mr. Scarola stated that "I believe that we can have all of the material terms resolved by noon tomorrow" and that "any terms that remain[ed] unresolved . . . are ancillary provisions." *Id.* at 7-8.

During the evidentiary hearing, counsel testified regarding their subjective beliefs underlying their representations that a settlement had been achieved. According to Mr. Cuza, the parties had reached a settlement, although they were still working on the language of the exonerating statement, as well as the non-solicitation agreement.  *See* 3/1/22 Hrg. Tr. 15:2-23.  Mr. Cuza further believed that the parties had agreed on the issues they would submit to me regarding Dr. Molloy.  Mr. Cuza testified that the parties agreed that the purchase price of Dr. Molloy's shares would be $2.1 million, but that the payment would be reduced by whatever I decided Dr. Molloy owed to Coastal on a $1.5 million promissory note previously issued.  *Id.* at 16:10-18.  According to Mr. Cuza, the parties agreed that the amount Dr. Molloy owed on the promissory note would be capped at $1.355 million.  *Id.* at 16:23-17:14. The parties agreed to execute mutual releases containing confidentiality provisions and non-disparagement agreements.  *Id.* at 26:4-11; 28:1-3.

By contrast, Mr. Pike testified at the evidentiary hearing that although he

believed at the time of the calendar call that the parties had agreed to the material terms, they did not have a settlement, only a tentative agreement because they had not yet formalized the language of the non-disparagement provision, or the non-competition and non-solicitation agreements; nor had they agreed to the exonerating statement, all of which were also "substantial material terms." *See* 3/1/22 Hrg. Tr. 107:10-108:17; 3/4/22 Hrg. Tr. 11:3-6; 12:20-24; 19:22-20:6.  Mr. Pike testified that at the time of calendar call, the parties agreed that Coastal would make a payment of $2.1 million and that there would be a carve-out to the non-competition agreement so Dr. Kuppinger could continue providing services to Zativa Life.  *See* 3/4/22 Hrg. Tr. 9:16-17; 11:14-17; 12:4-7; 14:15-16.

However, Mr. Pike testified that further discussions after the calendar call revealed additional terms on which the parties had not, in fact, reached agreement. For example, Mr. Pike testified that there had been no discussion about capping Dr. Molloy's liability for the promissory note, and in fact, Defendants had reserved their right to argue that Dr. Molloy was not owed any money at all.  *See* 3/1/22 Hrg. Tr. 113:8-11; 3/4/22 Hrg Tr. 12:12-19; 17:22-25; Plaintiffs' Exhibit 4.  Another dispute that arose following the calendar call involved Coastal's possession of medical equipment that Dr. Kuppinger claimed belonged to him.  Contrary to Dr. Kuppinger's belief that the equipment would be returned to him, Mr. Pike testified that "our understanding from our side" was that Dr. Kuppinger would relinquish his ownership of the equipment because "the general release would release any and all clams, including those subsumed in the conversion claim."  *See* 3/4/22 Hrg. Tr. 13:9-12;

14:17-23.  Similarly, Mr. Pike denied ever agreeing to use only Coastal's shares as collateral for the financing needed to make the settlement payments; according to Mr. Pike, Defendants needed 100% of the shares (including Plaintiffs' shares) to obtain financing.  *Id.* at 16:2-14.

Following the calendar call, counsel continued to exchange emails in an effort to resolve the remaining disputes.  *See* Plaintiffs' Exhibit 4; Defendants' Exhibit 25. While some disputed terms were resolved, the emails reflect ongoing negotiations regarding the exonerating statement.  Mr. Boloy testified about counsel's exchange of proposed language for the exonerating statement.  These emails, which were exchanged after the calendar call, reveal the parties' impasse on this critical issue. *See* 3/4/22 Hrg. Tr. 80:24-82:5; Defendants' Exhibit 13.

Mr. Boloy testified that when counsel began exchanging draft versions of the settlement agreement, the extent of the parties' disputes became evident.  *See* Defendants' Exhibits 29, 30.  These disputes included: the collateral that would secure the financing needed to pay Plaintiffs, who would be liable in the event of a breach, whether Coastal was required to use proceeds from the sale or assignment of its accounts receivable to satisfy the payments due Plaintiffs, whether (and to what extent) Plaintiffs would cooperate with their former patients' personal injury lawsuits and how they would be compensated for their time, whether a breach of the non-disparagement agreement would constitute a material breach of the settlement agreement, and whether certain equipment would be returned to Dr. Kuppinger.  *Id.; see also* 3/4/22 Hrg. Tr. 92:16-94:12; 96:2-22; 97:2-9.  Mr. Boloy testified that in

exchanging the drafts of the settlement agreement it became apparent that there had been a "miscommunication" and "mutual mistake" because there were "a bunch of terms that were not agreed to" and that "the attorneys really [hadn't] contemplated . . . until it was actually reduced to writing . . ." *See* 3/4/22 Hrg. Tr. 94:1; 96:1; 108:18-24.

Mr. Scarola's testimony was consistent with the testimony of his co-counsel, Mr. Pike and Mr. Boloy. He testified that the language of the exonerating statement, as well as the non-disparagement, non-solicitation, and non-competition agreements were all material terms that had not been resolved at the time of calendar call. *See* 3/15/22 Hrg. Tr. He reiterated that neither Plaintiffs' cooperation in their former patients' lawsuits nor any financial liability by the individual Defendants had been discussed prior to the calendar call and so defense counsel were unaware that these issues were in dispute. *Id.*

## DISCUSSION

In determining whether the parties have reached an enforceable settlement agreement, I must look to Florida contract law. *Hayes v. National Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999); *Williams v. Ingram*, 605 So.2d 890,893 (Fla. Dist. Ct. App. 1992). In Florida, the party seeking to enforce a settlement bears the burden of establishing that the opposing party assented to all material terms of the contract. *Carroll v. Carroll*, 532 So.2d 1109 (Fla. Dist. Ct. App. 1988). Mutual reciprocal assent to every essential term is a prerequisite to the formation of a contract. G*ibson v. Courtois*, 539 So.2d 459, 460 (Fla. 1989).

No enforceable contract exists where essential terms of the agreement remain open and are subject to further negotiation. *Freedman v. Fraser Engineering & Testing, Inc*., 927 So.2d 949, 952 (Fla. Dist. Ct. App. 2006). "Where the parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of the minds, and consequently, no contract while the agreement is incomplete." *Goff v. Indian Lake Estates, Inc.*, 178 So.2d 910, 912 (Fla. Dist. Ct. App. 1965).  "Preliminary negotiations leading up to the entry into a contract, therefore, must be distinguished from the contract itself."  *Murdoch Sec. v. Navarro Grp. Ltd., Inc*., No. 08-60505-CIV, 2010 WL 11505556, at \*6 (S.D. Fla. Jan. 27, 2010) (citing *Williams v. Ingram*, 605 So.2d 890, 893 (Fla. Dist. Ct. App. 1992)). "[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp*., 302 So.2d 404, 407 (Fla. 1974).  "For a settlement agreement to be binding on the parties it should be clear that it is full and complete, [and] covers all issues . . ." *Gaines v. Nortrust Realty Mgmt., Inc.*, 422 So.2d 1037, 1040 (Fla. Dist. Ct. App. 1982).

Here, the record establishes the parties' unequivocal intent to take further action prior to achieving a binding agreement.  *See Murdoch Sec.,* 2010 WL 11505556, at \*6; *Dows v. Nike, Inc*., 846 So. 2d 595, 602 (Fla. Dist. Ct. App. 2003).  As the hearing testimony and parties' email exchange of competing proposals demonstrates, they never "said the same thing;" indeed, given that the terms proposed by each side never

mirrored each other, there was no mutual assent and thus, no enforceable agreement.

This case presents facts similar to those in *Wisekal v. Lab'y Corp. of Am.*, No. 12-80806-CIV, 2016 WL 4154781 (S.D. Fla. Mar. 8, 2016) (J. Hurley). There, following negotiations with a mediator, the parties notified the court that settlement had been reached. Thereafter, in the process of drafting and exchanging releases fleshing out the terms of the agreement, the parties' discussions broke down over two critical terms: the resolution of an outstanding lien and the scope of a required confidentiality provision. Because the parties could not reach agreement on these two issues, no releases or written settlement documents were ever executed. *Id.* at *2.

Judge Hurley noted that although the parties in *Wisekal* told his chambers that a settlement had been reached, "it is apparent that the parties had not agreed on the details" of these two issues, both of which "touched upon a material term." *Id.* Thus, Judge Hurley found the phone call announcing that a settlement had been reached "suggests existence of a mutual mistake" because the parties' subsequent communications revealed a "complete impasse" which precluded a meeting of the minds. *Id.* at *3-4.

In *Wisekal*, even though counsel did not mention the two unresolved issues when they advised the court that a settlement had been reached, Judge Hurley found that this did not render the two issues non-essential. Rather, Judge Hurley noted that the two issues had been discussed during the mediation as a condition of settlement and thus they were "critical component[s]." *Id.* Nevertheless, the parties'

"very differing views" about these issues only became apparent in subsequent discussions. *Id.* The parties' communications at the mediation "only show[ed] an agreement in concept which hinged on [other] issues," but the parties' ultimate failure to reach a specific agreement on them precluded a finding of an enforceable settlement. Thus, Judge Hurley concluded that the plaintiff failed to carry his burden of showing an unequivocal meeting of the minds. *Id.*

Similarly, here, I find that counsel's representations to Judge Middlebrooks at the calendar call that a settlement had been reached were made in good faith. Having presided over the settlement conference, I witnessed each side's persistence in working to achieve a resolution. I also witnessed their disagreement over terms that were never mutually agreed in post-mediation discussions. The reality of the distance between the parties was laid bare in their subsequent negotiations. Despite Plaintiffs' insistence that the material terms were agreed to, it is clear that there were additional terms that were significant to both sides that remained unresolved, either because they had not been fully discussed or because of the parties' mutual misunderstanding. At a minimum, Plaintiffs' motion must be denied because the parties never agreed upon the exonerating statement, which Defendants specifically told Judge Middlebrooks was a material term of the settlement.

In sum, the testimony and exhibits presented at the evidentiary hearing reveal that there was no meeting of the minds as to several material terms, and that at most, there was only an agreement to agree in place. Thus, Plaintiffs have failed to satisfy their burden of showing that there was mutual reciprocal assent as to every essential

term, which precludes the finding of an enforceable settlement agreement.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Plaintiffs' Motion to Enforce a Settlement Agreement (ECF No. 125) is **DENIED.**  By separate order, the Court will schedule a status conference to discuss setting a trial date for this matter.


**DONE and ORDERED** in Chambers this 9th day of May, 2022, at West Palm Beach in the Southern District of Florida.

_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE